The opinion of the court was delivered by
Nicholls, C. J.
An argument has been filed in this court touching the legal effect of our restraining order — the object, we presume, being to show that the District Judge had reasonable ground upon which to have placed the construction he did'upon that order.
It is said that “ at the time the order issued relators were effectually enjoined by the decree of injunction. The restraining order of the Supreme Court was issued to sustain the status quo and to restrain the District Court from further cognizance of the case except to maintain the status quo. In order that this be maintained it was the duty of the District Court to let things remain as they were — both parties, plaintiff and defendants, being held in suspense — neither being allowed to do any act which might in any way detract from the status quo. The plaintiff in injunction-was to remain motionless in the position which.he had acquired by the proceedings actually had, and to make no move of an aggressive character against his adversary. On the other hand, defendants, who had been effectually enjoined from proceeding any further, were still left under the operation of the provisional writ of injunction. They were bound to continue to respect the provisional writ of injunction unless the Supreme Court intended by issuing the restraining order to pass at once on the validity of the injunction writ and to dissolve - it *1511 ex parte. Did the court intend to pass finally on the merits of the injunction or the validity of the provisional writ of injunction? Did it intend to do so ex parte without hearing what the judge a quo and the party plaintiff had to say in vindication of its issuance? By no means. No restraining order could have such an effect, for then there would be a misnomer in terming it a restraining order, since, instead of restraining for the purpose of maintaining the status quo and preventing all parties from altering it, there would be a retroactive order of an aggressive character amounting to a decree setting aside a judgment already rendered — a provisional judgment of injunction, it is true, but a judgment which, under the well-established jurisprudence, can not be dissolved by the judge without first giving previous notice to the party who obtained the writ. The restraining order accompanying the writ of certiorari is intended simply to maintain the status quo before the date of the issuance of such order. It must not be confounded with the action of the court to dissolve the injunction.”
“ The duty of the District Judge was, under the restraining order, to maintain the cause in the state in which it was at that moment, and this necessitated the maintenance intact of the provisional order, and when the defendants, seeking to take advantage of the restraining order as understood by them, were taking aggressive steps to undo and nullify the writ of injunction it became the imperative duty of the District Judge to prevent them from doing an illegal act forbidden by him. This the District Judge could only do by proceeding on rule to punish for contempt, and in doing so he was far from being in contempt of the' Supreme Court.”
When we set aside the last order issued by the District Court (issued by it after it had itself been served with the restraining order from us), ruling the defendants in injunction to show cause why they should not be punished for contempt, we passed upon and decided adversely to the position taken by the District Judge in- the argument made on his behalf. The petition to the District Court for the injunction called in question the power and authority of the Governor and the power and authority of the Senate. The injunction was granted and the effect of that order was to immediately paralyze the action of the Executive and Senate. The application to this court for writs of prohibition and certiorari called in question the absolute want of power, jurisdiction and authority of the District Judge himself to bring about such a condition of things.
*1512 After careful consideration of the matter submitted we issued the restraining order referred to, evidencing the fact that a strong prima facie showing had been presented against the power and authority assumed by the District Judge. The District Judge was notified that his own power and jurisdiction was at issue. The order to him was clear and unambiguous. He was ordered to proceed no further in the matter. It was his duty to obey. There is no question before us [as matters now stand] as to what effect the restraining order had upon the injunction, or as to what the duty of defendants in injunction was in respect to the matters enjoined after our restraining order had issued to the District Judge. We are dealing exclusively now with the duty of the District Judge himself under the latter order. If the restraining order left the injunction intact.as claimed and the action of defendants violated the alleged resulting status quowhich was brought about by it, their act (on that hypothesis) was a contempt not of the District Oourt, but of this court, and was to be punished by ourselVes and not by the District Judge.
If the District Attorney believed that the defendants had been guilty of contempt he should have addressed himself to us and pot to the District Judge, and the latter should have at once declined acting when himself appealed to. This matter we think would have been clear enough had it been coolly, temperately and judicially approached and dealt with. Th9 case is'obviously one in which strong political feelings and antagonisms have been developed, as shown by the pleadings and briefs of the parties — parts - of which on both sides are not to be commended and have not been quoted. We accept as true the declarations made by the District Judge and District Attorney that their course was not actuated by any designed or intentional disrespect of this court or any of its members, but none the less the fact remains that our order was disobeyed. We can not accede to respondents’ prayer that they be adjudged not guilty, and that the rules taken here be discharged. They were unquestionably guilty of contempt of court and we so adjudge them. We can not permit this matter to pass uncensured.
Having disposed of this preliminary question we next direct our attention to the writs of prohibition and certiorari which we ordered to issue. The first proposition advanced by the respondents is that relators invoked a- wrong remedy — that prohibition as its name implies is a writ for the purpose of preventing not of annulling, and *1513 that in this ease the matter sought to be prohibited was an accomplished fact — as the relators were already effectually enjoined and they could only be released from the effect of the same by regular proceedings to dissolve in the District Oourt. That the writ of certiorari as applied for is merely an ancillary writ intended to bring up the record for the purpose of passing upon the application for a prohibition. We have ourselves stated that the object of the writ of prohibition was to prevent further action in a case where jurisdiction, power and authority to act is denied, and declared that it was the function of the writ of certiorari to undo matters which had taken such a shape as not to be remedied by the writ of prohibition. It is true that in this instance the injunction asked for had been granted, and that nothing further having been asked for by the plaintiff in injunction that particular proceeding was at an end, but none the less that injunction could well be made the basis of future action by the court itself which granted it. ' The proceeding for contempt taken in the matter before the District Judge, shows that there might be necessity for a prohibition to be directed to him, but granting that the condition was such as not to be properly reached by the particular writ applied for it would not follow that relator should be thrown out of court. There is an idea prevalent in this State arising from the fact that prior to the Constitution of 1879 the writ of certiorari was almost exclusively made use of for the purpose of the correction of errors in transcripts of appeal; that it has no greater scope, but this is a mistake — it is a substantive and far-reaching corrective writ concurrent with and frequently taking the place of the writ of prohibition. In the exercise of our supervisory jurisdiction we are not rigidly tied down by form. When the facts of a given case being recited present a case for relief by us under that jurisdiction and there is a prayer for such orders and decrees as those facts will justify and for general relief, we will not remit the relator to new, expensive and unnecessary and sometimes fruitless remedies simply by reason of a mistake in the writ specifically asked for.-
Defendants’ next contention is that the matter in dispute being over one hundred dollars and not shown to be over two thousand dollars a ease is presented where the question of jurisdiction should be primarily determined by the Oourt of Appeals, as it would be one within its appellate jurisdiction, and it should only reach this court after the case had passed through all the different stages of an ordi. *1514 nary suit and the ultimate result reached was against the exception nr plea to the jurisdiction.
We have on a number of occasions held that we would not as a general rule detach or split off an exception of jurisdiction from the •case in which it was an incident and decide it in advance of the final judgment in the case, but that proposition was simply the enunciation of a general rule subject to be departed from in exceptional or extraordinary cases. We do not find in the present case any occasion for the application of the rule which respondents invoke. What was the issue raised by the District Attorney in the District Court and what was the result reached on his application? The argument has been made to us on behalf of the respondents that with the application for the writ of injunction and the • granting of the injunction the case of the District Attorney was ended, and that is true. The District Attorney sought to go further in that case than to obtain the injunction itself, and this being granted to force relators into the position of being plaintiffs in a new suit to have themselves recognized as entitled to the positions to which they had been appointed. The District Attorney (even were he authorized to raise such an issue) did not seek to have it decreed in that particular proceeding contradictorily with the defendants that they were not entitled to their offices, nor did he cite them into court for that purpose and to have the appointments declared null as having been made by the Governor and confirmed by the Senate without authority. What he claimed was that the Governor was absolutely without legal power to make the appointments, and that upon his suggestion of that fact to the District Oourt it had the power at once to paralyze the action of the executive until the appointees should themselves have instituted legal proceedings to have themselves declared rightfully entitled to the offices and should have sustained their right thus collaterally attacked. If the defendants had •answered the injunction, what would have been their plea? Evidently that the court was without power or authority to thus summarily, by injunction, set aside the Governor’s action, paralyze it until his appointees should as plaintiffs have been able to have that •action judicially vindicated. The issue involved would be the District Court’s power in the premises, not the powers of the Governor and the Senate. If the District Court, on an exception taken as to its power, had determined that it had such power, and the matter had *1515 been appealed tb the Court of Appeals, what issue would have been before that court? Simply the issue of the power and authority of the District Court in the premises, nothing more. There would be no existing suit involving issues in which the question of jurisdiction would be incidentally raised as leading up to the decision of other questions; the very beginning and ending of the suit would be the question of the jurisdiction and power of the lower court. We see under such circumstances no reason to permit this question to be sent primarily for decision to the Court of Appeals. The “ matter in dispute” is not measured by the amount which the District Attorney has declared to be the value of the office of police juror. The question at issue is the power of the judiciary to summarily and positively check by injunction the exercise of the powers of the executive department. A more important question than this can scarcely arise, and is not to be disposed of in determining the jurisdiction of this court simply by reason of the value of the particular office which furnished the occasion from which arises a contest as to the powers of the two departments. The District Attorney does not pretend that in the particular proceeding to which he has resorted, the right of the defendants to their offices was to be therein litigated. The suit is not before us as one in which the rights of private individuals are challenged, and in which the jurisdiction, power and authority of the District Court to deal with those rights is called incidentally in question. We are not asked to dissolve the injunction, but to discharge it.
The next position contended for is that, inasmuch as there is a class of eases in which the judiciary is authorized to pass upon the legality and illegality of particular acts of the executive, and inasmuch as the District Attorney, a constitutional officer, had, under oath, declared that in the matter of the appointments of the three police jurors appointed from St. Landry the Governor’s action was illegal, the District Court had authority to take cognizance of the cause and to grant the order it did. That if there was any want of proper allegation in the petition it was a matter for exception or demurrer, and not for direct and immediate action by this court, as one involving the power and jurisdiction of the lower court.
We had occasion in State ex rel. Kuhlman vs. Judge, 47 An. 57, and State ex rel. Keller vs. Judge, 47 An. 61, to examine into and pass upon an objection of the same character. We see no reason to *1516 change the views therein expressed. This case, as to the pleadings of the District Attorney, is as much (in fact more) open to objection as the pleadings in those cases, and the relief asked for is more sweeping and radical than was there asked. Here there are no opposing private interests sought to be protected; the District Attorney does not pretend to have been solicited by any one to institute the proceedings; he declares himself as acting for and on behalf of the State solely by virtue of his office. He has inaugurated, of his own motion, proceedings calling in question the power of the Governor and the Senate — the power of the Governor having been exercised, 'so relator’s petition declares (and the fact is not denied), under an official opinion delivered by the Attorney General, the highest law officer in the State in the prosecution of the interests of the State. It is the bounden duty of the judiciary to give-some force and effect to the acts of the executive. His acts are not to be presumed illegal and utterly wrong, particularly upon a mere conclusion of law announced by a District Attorney. The parties enjoined in this case had not gone into office under their commissions; they had not usurped the office, but before they had taken any steps whatever they were ordered and forced (as we have said), as plaintiffs, to primarily vindicate their rights and the authority of the executive in a new suit. The District Judge reversed the presumptions as to the validity of the Governor’s action and threw the judiciary department into immediate and direct clash with the executive department. Without any bond the exercise of functions of public functionaries has been put an end to. If a District Court can upon a mere declaration by a District Attorney that the Governor has illegally appointed a police juror [before that officer has taken his seat] successfully enjoin him from exercising his functions until he shall have brought suit to establish his right, and shall have established his right, the District Court could with equal propriety, upon a mere declaration of a District Attorney that the Governor had illegally appointed a District Judge or any other officer, enjoin him from qualifying, and thus bring about absolute confusion in the administration of public affairs. In the Kuhlman case we referred approvingly to Beebe vs. Robinson, 52 Ala. 66. The views of the Supreme Court of Alabama, expressed in that case, still command our approval.
The opinion we deliver, to-day does not touch the legality or the *1517 illegality of the action of the Governor in appointing the relators to the office of police jurors. That matter is left open. All that we decide now is that the District Oourt was without power or authority by injunction to tie up the relators in the exercise of the functions by anticipation, and to force those parties to remain powerless to act until as plaintiffs they had first affirmatively shown the authority of the Governor to make the appointments. See, on this subject, State ex rel. Cheevers vs. Duffel, 32 An. 653.
For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the writs which issued herein be perpetuated, and that the injunction granted by the District Judge of the Eleventh Judicial District Oourt in and for the parish of St. Landry, in the matter of the State of Louisiana ex rel. R. L. Garland, District Attorney, vs. Joseph P. Saizan et al., No. 15,853 on the docket of that court, be and the same is hereby set aside and discharged.