State ex rel. Fortier et als. vs. Capdevielle et als.

---

No. 13,665.

STATE EX REL. ALCEE FORTIER ET AL. VS. PAUL CAPDEVIELLE ET ALS.

SYLLABUS.

104 561<br>105 332<br>104 561<br>106 347

1. The constitutionality of a statute is to be presumed, and if a reasonable doubt arise it must be solved in favor of the legislative action and the act sustained.

2. A constitutional provision and an act of the Legislature, in their relation to each other, are to be so interpreted and applied as to give the legislative act validity and force rather than to avoid it, if it be found practicable to do so within the limits of a reasonable construction of the constitutional provision.

3. The exception, as to the subjects embraced within its scope, of that part of Article 48 of the Constitution of 1898, placing an inhibition upon the passage of statutes creating corporations, or amending their charters, unfetters the General Assembly, and it has authority to enact laws relating to the charters of the cities and larger towns of the State without previous publication of notice of intention to apply for such legislation having been made.

4. The Board of Civil Service Commissioners for the city of New Orleans, established under the Act of 1896, was protected in its official tenure by paragraph 5 of Article 325 of the Constitution only in so far as that its term of office could not be shortened prior to the general State election of 1900. After that date it is held that it was competent for the General Assembly to repeal the law which gave the Board its tenure, and after such repeal the Board ceases to exist.

APPEAL from the Civil District Court, Parish of Orleans—*St. Paul, J.*

---

*Fenner, Henderson & Fenner* (*Eugene D. Saunders* and *Edgar H. Farrar,* of counsel) for Plaintiffs, Appellants.

---

*Samuel L. Gilmore,* City Attorney, for Respondents, Appellees.

---

The opinion of the court was delivered by

BLANCHARD, J. The question the case propounds for determination is, the constitutionality *vel non* of Act 89 of the Acts of 1900.

The title of this statute is "An Act to provide a Civil Service for the City of New Orleans, to repeal all acts inconsistent or in conflict therewith, and especially Sections 38 to 67, inclusive, and Section 110 of Act No. 45 of the Acts of the General Assembly of the State of Louisiana for the year 1896." It was approved July 10, 1900.

It creates a Board of Civil Service Commissioners for the city, prescribing as members thereof the Mayor, the Treasurer, the Comptroller and two citizens to be appointed by the Mayor, by and with the advice and consent of the Council, who are to hold office during the term of the Mayor and Council appointing them.

The act then goes on to outline a system of civil service and prescribes the duties of the Board, etc.

By its terms it is made to take effect in all its parts immediately upon its promulgation, and it repeals all conflicting laws on the same subject matter, especially that part of the Act No. 45 of 1896 (city charter) relating to the establishment of civil service for the City of New Orleans.

Pursuant to the direction of the statute the Mayor appointed and the Council confirmed H. H. Hodgson and J. B. Vinet as citizen members of the Board, and thereupon the Board organized and entered upon the discharge of its duties.

Following this, relators brought the present action, which is described by them to be a *quo warranto* and injunction proceeding, instituted under the authority of Articles 867 and 868 of the Code of Practice, to test the title of respondents to the offices of Civil Service Commissioners of the City of New Orleans.

Relators claim to be, themselves, the Board of Civil Service Commissioners and deny the right of respondents to be such Board, or to exercise its functions.

The object, then, of the suit is to have determined the rival claims of the contending parties to the offices mentioned.

There is no doubt that the later act of the General Assembly, under which respondents hold, by its terms repeals, does away with and supersedes the earlier act under which relators claim.

But the latter deny the constitutional right and power of the General Assembly (1) to pass the act in form and manner as it was passed; (2) to thus set aside relators as the Board of Civil Service Commissioners and establish respondents as such Board in their place.

Relators' claim to the office rests upon Sections 38 to 65, both inclusive, of the act incorporating the City of New Orleans, approved July

7, 1896. and upon the fifth paragraph of Article 325 of the Constitution of 1898.

Their contention is that, pursuant to the provisions of the Act of 1896 aforesaid, they were appointed in January, 1897, to the office of Civil Service Commissioners by the then Mayor, one for the term of four years, another for the term of eight years, and the third for the term of twelve years; and that for and during their terms aforesaid they are entitled, each, to receive from the City of New Orleans a specified annual salary.

They aver that they entered upon the discharge of the duties of the offices aforesaid, fulfilled and are fulfilling the same, and that they have never been legally removed from said office.

With regard to the Act of 1900, upon which rests the tenure of respondents, relators assert the same to be null, void and of no effect (1) because it was passed in violation of Article 50 of the Constitution of 1898, and (2) because the said act, in so far as it attempts to legislate relators out of office, violates paragraph 5 of Article 325 of the Constitution.

The defense to the action, in brief, is that the Act of 1900 repealed those portions of the city charter (Act of 1896) under which relators were appointed to and hold the offices of Civil Service Commissioners, and that relators were, thus, dispossessed of said offices. In this connection, it is averred by respondents that the Act of 1900 is constitutionally valid in all its parts, and that they form the Board of Civil Service Commissioners provided for by the act.

The judgment below rejected the demands of relators and they prosecute this appeal.

The issue presented is one of law only. All the allegations of fact made in relators' petition are admitted of record to be true.

Act 89 of 1900 is an amendment of the city charter. Of this there is and can be no dispute.

Is this statute a local or special act, and if it be such, is it unconstitutional because not advertised prior to its introduction into the General Assembly, and because containing no recital that it was so advertised, as required by Article 50 of the Constitution?

Courts are not lightly to pronounce laws unconstitutional. Under some circumstances it may become their duty to declare what the Legislature has assumed to enact is void, but only upon the safest and surest grounds, and where it is unavoidable, can there be justification for this.

The task is always a delicate one and only to be entered upon with reluctance and hesitation.

The constitutionality of a law is to be presumed, and if a reasonable doubt arise it must be solved in favor of the legislative action and the act sustained.

Cooley Const. Law., Chap. VII.

Whenever an act of the Legislature can be reasonably so construed *and applied* as to avoid conflict with the Constitution and give it the force of law, such construction will be adopted by the courts. People vs. Blodgett, 13 Mich. 162.

So, too, a constitutional provision and an act of the Legislature, *in their relation to each other,* are to be so interpreted and applied as to give the legislative act force and validity, rather than to avoid it, or render it nugatory, if it be found practicable to do so within the limits of a reasonable construction of the constitutional provision.

Bringing these principles and general observations to bear upon the instant case, its difficulties are rendered less formidable.

## I.

By Article 48 of the Constitution of 1898 the General Assembly is prohibited from passing any local or special law * * * "creating corporations, or amending, renewing, extending. or explaining the charters thereof." But right here a *proviso* is attached declaring that this inhibition "shall not apply to municipal corporations having a population of not less than twenty-five hundred inhabitants."

The intention of the *proviso* beyond doubt is that, so far as cities and towns having a population of 2500, and over, are concerned, the Legislature has full authority to pass any and every law it may seem proper to that body to enact relating to the incorporation of same, or to extending, renewing, explaining, changing or amending their existing acts of incorporation. In other words, as to the cities and larger towns in the State, the Legislature is again possessed of the same authority over them in respect to their charters (except as restrained by other articles of the Constitution than Articles 48 and 50) as was possessed by that body prior to the adoption of the Constitution of 1879, which was the Constitution where limitations upon the legislative power in this regard first appeared.

Even if, as contended by appellants, a statute relating to the municipal government of a city or larger town be a "local or special" law,

then is the enactment of such a *local* or special law within the powers of the General Assembly by reason of its express exclusion from the operation of the article prohibiting local or special laws on certain specified subjects?

Article 50 *by its terms* has applicability only to local and special laws *on subjects not enumerated in Article 48*. It permits the General Assembly to enact local or special laws relating to subjects *not* enumerated in Article 48, if notice of the intention to apply therefor shall have been first published for thirty days in the manner directed by the article.

"Creating corporations, or amending, renewing, extending or explaining the charters thereof" *is* one of the prohibited subjects enumerated in Article 48, and, therefore, as to the same, Article 50 does not apply.

With or without the notice prescribed by Article 50, the General Assembly is denied authority to pass local or special laws relating to the subjects mentioned in Article 48.

This is the general rule and it is subject to but one exception which the article itself makes, and that is that its inhibitions do not extend to the subject of the larger municipal corporations of the State. As to these, the Legislature is left free to act as it sees fit.

Now, does the fact that before quitting the subject of prohibitions as to local and special laws, the Article 48 expressly excludes from its operation statutes relating to the government of the cities and larger towns, have the effect of bringing laws of that character within the grasp of Article 50? In other words, the declaration of Article 48 that municipal corporations of a certain class are excepted out of its provisions, does this bring that class within the requirement of Article 50, viz:—that laws with reference to the same must be preceded by the published notice required by that article, under pain of nullity?

We think not.

That part of Article 48 of the Constitution under discussion creates *a classification* of corporations as well as prescribes an exception as to one class.

It contains the enumeration of two classes of corporations, the first of which includes all private corporations and the smaller political corporations (the charters of towns and villages whose population is under 2500), as to which the Legislature is permitted to deal only through general laws applicable to all of that class; the second of which includes the larger political corporations (the charters of cities and towns whose

population is 2500 or over), as to which the Legislature is left to deal, if it see proper, directly through laws which affect them singly.

But both classes are "enumerated," dealt with; the general rule of prohibition established by the article applied to one, excluded from the other.

Being thus "enumerated," classified and dealt with they are lifted out of the grasp of the succeeding Article 50. That article has naught to do with laws on the subjects *named* in the prior article.

We hold, then, that the exception of Article 48 as to one class of corporations therein enumerated does not have the effect merely of removing the excepted corporations from the reach of that article and sending them to be grouped with the subjects falling within the purview of Article 50.

The exception, as to the subjects embraced within its scope, completely unfetters the General Assembly, and it has authority to enact laws relating to the charters of the cities and larger towns of the State without previous publication of notice of intention to apply for such legislation having been made.

That this, too, is the legislative interpretation of the two articles of the Constitution, is shown by the fact that various bills incorporating cities and towns, or amending their charters, have been passed in the two sessions of the General Assembly held since the adoption of the Constitution of 1898, without antecedent notice of intention to apply for same.

## II.

The second contention of relators is that Act 89 of 1900 is unconstitutional because it violates paragraph 5 of Article 325 of the Constitution, which provides that:—

"All officers, executive, legislative and judicial, State, parish and municipal, who may be in office at the adoption of this Constitution * * * shall hold their respective offices until their terms shall have expired, and until their successors are duly qualified, as provided by this Constitution, unless sooner removed, as may be provided by law; and shall receive the compensation now fixed by the Constitution and laws in force at the adoption of this Constitution, except as herein otherwise provided."

The argument is that relators, being in office at the time of the adoption of the Constitution of 1898 as the Board of Civil Service Commissioners for the City of New Orleans, fell within the category of

"municipal" officers who, under the constitutional provision quoted, are entitled to hold over until their terms expire and to continue to receive the compensation fixed by the law of their appointment in force at the adoption of the Constitution.

We have already seen that they were appointed for the terms of four, eight and twelve years respectively. So that, under the construction contended for, they (being willing) must hold office and perform the functions of a Board of Civil Service Commissioners and draw the salaries attached to the positions during all those years, notwithstanding a change of policy in respect to the matter of civil service may be deemed advisable by the law-making power of the State.

In other words, the hands of the Legislature are tied. It cannot repeal the Civil Service law of 1896, change or modify it.

Though that law was enacted by one Legislature, though relators in their official capacity are the creatures of an act passed by a former Legislature, the proposition is that the present Legislature—a subsequent one—cannot abrogate it, cannot recall the mandate issued to relators as Civil Service Commissioners, cannot affect a change of public policy in respect thereof.

We cannot adopt such a construction. It is not the "common sense" of the situation.

It is not considered to be within the intendment of the constitutional provision.

Article 325, which is the "schedule" of the Constitution, was never intended to be so far-reaching in its effect.

That this is so, is apparent from the opening sentence of the article, which reads:—

"That no inconvenience may arise from the adoption of this Constitution, and in order to carry this Constitution into complete operation, it is hereby declared:"

Then follow declarations to the effect (1) that all laws in force at the time of the adoption of this Constitution, not inconsistent therewith, shall remain in force until altered or repealed by the General Assembly.; (2) that all pending writs, actions, prosecutions, etc., shall continue in full force and effect; (3) that all laws inconsistent with the Constitution shall cease upon its adoption; (4) that all recognizances, obligations and other instruments, fines, taxes, penalties, etc., shall remain unaffected by the adoption of the Constitution; (5) that all officers, executive, legislative and judicial, State, parish or municipal, who may be in office at the adoption of the Constitution, shall hold their respect-

ive offices, etc.; (6) that the Constitution of 1879 and amendments thereto are superseded by the new Constitution except as specified; (7) that the courts provided for by the new Constitution shall be construed to be the same courts, etc., as those of the same name existing under the Constitution of 1879; and (8) that the new Constitution shall be in full force and effect from and after the 12th day of May, 1898.

Evidently, what the framers of the Constitution had in view and intended, in enacting this Schedule Article, was to make provision against any disorder or disarrangement in the government of the State, or its political subdivisions, as the result of the supersession of the old Constitution by the new. The machinery of government, *its running-gear,* was to be preserved while the old Constitution was slipped from its place as the organic law and the new substituted.

It could not have been intended to declare it the public policy of the new Constitution, as insisted on by relators, that the General Assembly could not, at its will, after a certain time, abolish subordinate municipal offices, existing as the result of previous legislative action.

If that had been the purpose why wait to so declare it in the Schedule of the Constitution—the last chapter of that instrument—where, by common understanding, we only look to find the usual provisions for the transference of the government from the dominion of one organic law to that of another.

The whole history of the calling, election of members and convocation of the Constitutional Convention of 1898 shows that while the people of the State desired and determined to have a new Constitution, it was equally their purpose that there should be no disturbance of the official tenures of the then existing officials of the State, or its political subdivisions, until the general State election next ensuing thereafter.

This was made part of the act providing for the submission to the people of a proposition to hold a Convention and to fix its powers.

Thus, in the first section of the Act (No. 52 of 1896) is a declaration that the "Convention shall be and is hereby prohibited from enacting, ordaining or framing any article or ordinance * * * whereby the terms of office of the General Assembly or any of the present State, district, parochial or municipal officers, whether elected or appointed, shall be reduced or shortened, or the salary thereof reduced or diminished, prior to the first Tuesday after the third Monday in April, 1900."

State ex rel. Fortier et als. vs. Capdevielle et als.

This was the date of the then next general State election.

The people, when they voted for the holding of the Convention, voted for it to be held "in accordance with Act No. 52 of 1896," thus instructing their delegates, elected at the same time, to observe the limitations placed upon the power of the Convention by the act of the Legislature.

Paragraph 5 of the Schedule Article 325 of the Constitution, upon which relators rely as sheilding them from legislative action abolishing their office, must be read in the light of the above provision quoted from the act providing for the holding of the Convention.

The members of the Convention, in the adoption of paragraph 5 of the article, were carrying out the mandate of the people—that there should be no disturbance of the State, district, parochial or municipal officers, then in power throughout the State, prior to the General State election next thereafter to be held.

And it is not considered that the Convention intended to go further than this in declaring for the retention of existing officials in office, save, of course, as to those judicial officers whose terms as fixed in the Constitution extended beyond the date of the then next general State election.

So that, it was competent for the General Assembly, subsequent to the general State election of April, 1900, to enact Act 89 of that year, whose constitutionality is assailed in this suit.

By so doing it abridged none of the rights reserved by the Constitution of 1898 to relators as the Board of Civil Service Commissioners for the City of New Orleans. That Board was protected by the constitutional provision only in so far as that its term of office could not be shortened prior to the general State election of 1900. Its tenure to that extent was fixed in the Constitution. Thereafter it was competent for the General Assembly to repeal the law which gave the Board its tenure, and after such repeal the Board ceased to exist.

Judgment affirmed.

MR. JUSTICE MONROE concurs in the decree.