161 So. 587

WALMSLEY, Mayor, et al. v. O'HARA, President of State Board of Health, et al.

SAME v. EVANS, Chief Engineer, et al.

Nos. 33369, 33370.

April 10, 1935.

Rehearing Refused April 29, 1935.

Edward M. Robbert, City Atty., Edward Rightor, and Luther E. Hall, all of New Orleans, for plaintiffs.

Gaston L. Porterie, Atty. Gen., George M. Wallace, Asst. Atty. Gen., Harold A. Moise, of New Orleans, and Peyton R. Sandoz, of Baton Rouge, for relators.

LAND, Justice.

By Act No. 20 of the First Extra Session of 1935, section 16 of the city charter of the city of New Orleans (Act No. 159 of 1912, as amended), creating the board of commissioners of the police department, and section 17 of the city charter, creating the board of commissioners of the fire department, were *expressly* repealed, and *new* police department and *new* fire department boards were *created* by the act, composed of *new* members to be appointed by the Governor of the state.

*Before Act No. 20 of the First Extra Session of 1935 had gone into effect*, the district judge, Hon. Hugh C. Cage of the civil district court, at the instance of respondents, *issued a temporary restraining order*, followed by a preliminary injunction, prohibiting and restraining relators, *before they had qualified* as members of the new police and new fire department boards, as appointees of the Governor, from exercising the duties of the offices to which they had been appointed, and relegated relators to an ouster suit against respondents, the alleged members of the old police and fire department boards, who had been legislated out of office by Act No. 20 of the First Extra Session of 1935, which had abolished these boards, by the express repeal of sections 16 and 17 of the city charter creating them, Act No. 159 of 1912.

These proceedings were had, without the district judge declaring Act No. 20 of the First Extra Session of 1935 unconstitutional, although the constitutionality of the act had been attacked by respondents.

Relators have applied to this court for writs of certiorari and prohibition ordering

respondents to desist from further proceedings and in the execution of the judgment herein rendered, until final determination of the constitutionality of the act by the court of last resort.

Act No. 20 of the First Extra Session of 1935, in the exercise of the police power of the state, creates a new police board and a new board of commissioners of the fire department of the city of New Orleans, and repeals any provision of law or of the charter of the city of New Orleans, Act No. 159 of 1912, in conflict with the provisions of the new act.

Act No. 20 of the First Extra Session of 1935 therefore is, prima facie, the legislative exercise of the police power of the state, in the creation of these two new boards, which operate, in relation to the state's police power, in the preservation of the public peace and security, and in the preservation of public safety to life and property against fires.

The Legislature declares that Act No. 20 of the First Extra Session of 1935 has been enacted, in the exercise of the unabridged and unrestricted police power of the state reserved to it by the Constitution of 1921, while the city of New Orleans, the creature of the state, the sovereign, denies the extent of the police power thus claimed. Section 3, p. 77, Act No. 20 of the First Session of 1935.

As the police power is inherent in the state, and is the peculiar badge and prerogative of its sovereignty, this court cannot presume any limitation upon the state's police power. Statutes are always presumed to be constitutional, and this presumption will be indulged in by the courts *until the contrary is clearly shown.*

8 Cyc. 803, verbo, Constitutional Law; O'Gorman & Young v. Hartford Fire Insurance Co., 282 U. S. 251, 257, 51 S. Ct. 130, 75 L. Ed. 324, 72 A. L. R. 1163; Sinking Fund Cases, 99 U. S. 700, 25 L. Ed. 496; Toombs v. Citizens' Bank, 281 U. S. 643, 647, 50 S. Ct. 434, 74 L. Ed. 1088.

As said in Sinking Fund Cases, 99 U. S. 700, 718, 25 L. Ed. 496: "Every possible presumption is in favor of the validity of a statute, and this continues *until the contrary is shown beyond a rational doubt.* One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." (Italics ours.)

Legislative acts are entitled to great respect and are presumed to be constitutional. To destroy this presumption, they must be shown *manifestly* to violate the organic law. City of New Orleans v. Robira, 42 La. Ann. 1098, 8 So. 402, 11 L. R. A. 141; State v. Rose, 125 La. 462, 51 So. 496, 26 L. R. A. (N. S.) 821; Duffy v. City of New Orleans, 49 La. Ann. 114, 21 So. 179; State ex rel. Fortier v. Capdevielle, 104 La. 561, 29 So. 215.

The statement of the district judge that Act No. 20 of the First Extra Session of 1935 can be "easily *declared* unconstitutional" is a matter which can be determined only on the trial of the merits as to the constitutionality of the act, which has not yet been passed upon in the court below.

Most assuredly, *laws are not to be "easily" presumed to be unconstitutional,* if constitutional government is to continue in the states of the union and our free institutions are to be preserved.

The presumption, therefore, is that Act No. 20 of the First Extra Session of 1935 is constitutional.

It was only by erroneously *reversing the presumption* of the constitutionality of Act No. 20 of the First Extra Session of 1935 that the district judge found any basis for the issuance of the injunction in this case.

In State ex rel. Saizan v. Judge, 48 La. Ann. 1501, 21 So. 94, the relators had been appointed and commissioned by the Governor of the state, under the provisions of Act No. 94 of 1884, as three additional or *new* police jurors on the police jury of St. Landry parish.

This act did not confer upon the Governor the power to remove any member of the police jury of that parish.

Act No. 20 of the First Extra Session of 1935 authorizes the Governor to appoint all of the *new* members of the *new* police and fire boards of the city of New Orleans. As already stated, this act *abolished* the old boards, and *legislated out of office* the old members of these boards.

This act did not confer upon the Governor any power of removal of the members of the old boards. *The Legislature* had created these old boards. *The Legislature* had abolished these old boards. *The Legislature* had removed all the members of these old boards. The *new* members of the *new* boards were not, therefore, *the successors* of the *old* members of the *old* boards, which had been abolished. State v. Goff, 135 La. 335, 65 So. 481.

Nor in State v. Judge, above cited, were the additional or *new* members of the police jury of St. Landry parish *the successors* of any members of the police jury of that parish.

It is clear, therefore, that neither in the case of the appointment of the additional or *new* members of the police jury of St. Landry parish, under Act No. 94 of 1884, nor in the case of the appointment of the *new* members of the *new* boards under Act No. 20 of the First Extra Session of 1935, *did the Governor, by his appointment, remove any member* from the police jury of that parish, *nor any member of the old boards of the city of New Orleans, for they had already been removed by the Legislature.*

The old members of the old boards are not claiming the offices of the new members of new boards, created by Act No. 20 of the First Extra Session of 1935; but they are claiming the old offices of the old boards, created by sections 16 and 17 of the city charter, solely on the ground that Act No. 20 of the First Extra Session of 1935, creating the new boards and the new members, and abolishing the old boards, is unconstitutional.

Relators and respondents, therefore, *are not claiming the same offices, but different offices, under different laws.*

Under the presumption of the constitutionality of Act No. 20 of the First Extra Session of 1935, the offices of respondents have been abolished, and they are out of office. The only right, under such presumption, that respondents have *is the right to be reinstated in office*, in the event Act No. 20 of the First Extra Session of 1935 is declared to be unconstitutional by the court of last resort. No question is raised against such persons

instituting intrusion into office on quo warranto proceedings.

It is rank sophistry to pretend *that officers, whose offices have been abolished, have a superior prima facie right to be maintained in office,* over the *new* claimants to the *new* offices which the Legislature has created, since the presumption of law is in favor of the constitutionality of the *new* act, and therefore necessarily in favor of *the superior prima facie right* of the *new* claimants to the *new* offices created by that act.

It follows that relators were illegally and wrongfully enjoined from qualifying and taking possession of the new offices to which they had been appointed by the Governor of the state, *since, under their superior prima facie right* as the *new* claimants to these *new* offices, they are entitled, primarily, to qualify and to exercise the functions of their offices, and to be maintained in the possession of same until the final determination by the court of last resort of the constitutionality of Act No. 20 of the First Extra Session of 1935. 46 C. J. p. 1007, § 215.

In the case of Guillotte v. Poincy, 41 La. Ann. 333, 6 So. 507, 5 L. R. A. 403, Guillotte was the actual incumbent, duly appointed, commissioned, and qualified, of the office of member of the board of flour inspectors for the city and port of New Orleans. Guillotte was holding office under an existing law, *presumed to be constitutional,* and therefore *he had a superior prima facie right to the office.* The board of flour inspectors had not been abolished, and the old members had not been removed by a new act creating a new board and new members to be appoined by the Governor, as in the case at bar. In the Guillotte Case, Poincy was acting under a commission from the Governor, attacked by Guillotte as invalid. Guillotte and Poincy were claiming *the same office.* Under the presumption of the constitutionality of the law under which Guillotte held his office, *he was in office,* and was therefore clearly entitled to an injunction to maintain the status quo.

In the case at bar, under the presumption of the constitutionality of Act No. 20 of the First Extra Session of 1935, *respondents are out of office,* and the only right that they have *is the right to be reinstated,* in the event that Act No. 20 of the First Extra Session of 1935 is finally determined to be unconstitutional by the court of last resort.

The presumption that laws are constitutional, unless they are shown to be *manifestly* unconstitutional, is founded in a sound, wise, and necessary public policy.

If every important act of a Legislature can be attacked, *by anticipation,* as unconstitutional, *and be presumed to be unconstitutional,* adequate law enforcement in a state would become hampered to such extent as to become almost impracticable; and every appointee of the executive, under the presumption of illegality, could be enjoined from qualifying, and thus bring about absolute confusion in the administration of public affairs. State v. Judge, 48 La. Ann. 1501, 1517, 21 So. 94.

For this very reason it was held in State v. Judge, 48 La. Ann. 1501, 1516, 21 So. 94, 101, that: "It is the bounden duty of the judiciary to give some force and effect to the acts of the executive. His acts are not to be presumed illegal and utterly wrong upon a mere conclusion of law announced by a dis-

trict attorney. *The parties enjoined in this case had not gone into office under their commissions; they had not usurped any office; but, before they had taken any steps whatever*, they were ordered and forced (as we have said), *as plaintiffs, to primarily vindicate their rights, and the authority of the executive in a new suit.* The district judge reversed the presumptions as to the validity of the governor's action, and threw the judiciary department into immediate and direct clash with the executive department." (Italics ours.)

In the case at bar, the relators, the appointees of the Governor, *had not gone into office under their commissions; they had not usurped office;* but the action of the executive in appointing relators to office was paralyzed, and relators were tied up, by injunction in the exercise of the functions of their offices *by anticipation,* and forced to remain powerless to act, until they should themselves have instituted legal proceedings to have themselves declared rightfully entitled to the offices to which they had been appointed.

The writ of prohibition issued in State v. Judge, above cited, was perpetuated and the injunction was set aside.

T. Semmes Walmsley, mayor of the city of New Orleans, Dr. Frank R. Gomila, commissioner of public safety of the city of New Orleans, and Frank J. Brennan, members of the old police board of the city of New Orleans, created by section 16 of Act No. 159 of 1912, as amended, are plaintiffs in injunction in suit No. 211529 in division A of the civil district court for the parish of Orleans against the new appointees of the new police

board of the city of New Orleans, created by Act No. 20 of the First Extra Session of 1935, to wit: George Reyer, superintendent of police of the city of New Orleans; Dr. Joseph A. O'Hara, president of the state board of health; and Robert Maestri, commissioner of the department of conservation of the state.

And T. Semmes Walmsley, mayor of the city of New Orleans, Dr. Frank R. Gomila, commissioner of public safety, and Alfred Miester, members of the old board of commissioners of the fire department of the city of New Orleans, created by section 17 of Act No. 159 of 1912, as amended, are plaintiffs in injunction in suit No. 211538 in division A in the civil district court for the parish of Orleans against the new appointees of the new board of commissioners of the fire department of the city of New Orleans, created by Act No. 20 of the First Extra Session of 1935, to wit: John M. Evans, chief engineer of the fire department of the city of New Orleans; Seymour Weiss, president of the board of commissioners of the port of New Orleans; and Richard J. Gregory, register of voters of the parish of Orleans.

The opinion we deliver to-day does not touch the constitutionality vel non of Act No. 20 of the First Extra Session of 1935. That matter is left open.

■ 2. We consider the matters involved in this case to be of such importance as to require the exercise of the control and general supervision over inferior courts, granted to this court by section 10 of article 7 of the present Constitution.

■ The "matter in dispute" in such a case is not measured by the value of the offices of relators, if any, and this court has jurisdic-

tion in the present proceeding. State v. Judge, 48 La. Ann. 1501, 1515, 21 So. 94; Brunner Mercantile Co. v. Rodgin, 130 La. 358, 57 So. 1004; Loeb v. Collier, 131 La. 377, 59 So. 816; Seals v. Funches, 147 La. 600, 85 So. 604.

It is therefore ordered that the rules nisi issued herein be made absolute.

It is further ordered that writs of prohibition issue to the Honorable Hugh C. Cage, judge of division A of the civil district court of the parish of Orleans; to the city of New Orleans, appearing through T. Semmes Walmsley, mayor, and Dr. Frank R. Gomila, commissioner of public safety of that city; to T. Semmes Walmsley, mayor of the city of New Orleans, and Dr. Frank R. Gomila, commissioner of public safety, appearing in their respective individual capacities, as plaintiffs in the injunction suits against relators, No. 211529 and No. 211538 in division A of the civil district court for the parish of Orleans; and to T. Semmes Walmsley, mayor of the city of New Orleans; Dr. Frank R. Gomila, commissioner of public safety of the city of New Orleans; and Frank J. Brennan, appearing in suit No. 211529 in said court, as plaintiffs in injunction and as members of the old police board of the city of New Orleans, created by section 16 of the city charter of the city of New Orleans, as amended; and to the old police board of the city of New Orleans, represented by said members and appearing as plaintiff in that suit. And to T. Semmes Walmsley, mayor of the city of New Orleans; Dr. Frank R. Gomila, commissioner of public safety of the city of New Orleans; and Alfred Miester, appearing in suit No. 211538 in said court as plaintiffs in

injunction and as members of the old board of fire commissioners of the fire department of the city of New Orleans, created by section 17 of Act No. 159 of 1912, as amended; and to the old board of commissioners of the fire department of the city of New Orleans, created by section 17 of Act No. 159 of 1912, as amended, and represented by said members in that suit, prohibiting respondent judge and respondents, collectively and individually, and the city of New Orleans and respondent boards from proceeding further in said suits, and from the execution of the judgments rendered in said suits, enjoining and restraining relators George Reyer, superintendent of the police of the city of New Orleans, Dr. Joseph A. O'Hara, president of the state board of health, and Robert Maestri, commissioner of the department of conservation of the state, appointees of the Governor as new members of the new police board of the city of New Orleans, created by Act No. 20 of the First Extra Session of 1935; and enjoining and restraining relators John M. Evans, chief engineer of the fire department of the city of New Orleans, Seymour Weiss, president of the board of commissioners of the port of New Orleans, and Richard J. Gregory, register of voters of the parish of Orleans, appointees of the Governor, as new members of the new board of commissioners of the fire department of the city of New Orleans, created by Act No. 20 of the First Extra Session of 1935, from qualifying, organizing, taking possession of their offices, and discharging their duties as members of said new boards.

It is further ordered that the writs of prohibition herein issued be perpetuated, and that the injunctions issued in the above-nam-

ed suits in the civil district court for the parish of Orleans be, and are hereby, set aside and discharged.

O'NIELL, C. J., dissents and hands down reasons.

ROGERS and ODOM, JJ., dissent and concur in the dissenting opinion handed down by the CHIEF JUSTICE.

O'NIELL, Chief Justice (dissenting).

It is said in the prevailing opinion rendered in this case that an act of the Legislature is presumed to be constitutional, and that, in order to destroy that presumption, the act "must be shown *manifestly* to violate the organic law." I agree to that statement. It means that every act of the Legislature is presumed to be constitutional until it is shown to be unconstitutional, and that one who questions the constitutionality of an act of the Legislature must make such allegations as to show that, if his contentions are well founded and his allegations are true, the act is unconstitutional. My opinion is that the members of the board of commissioners of the police department and the members of the board of commissioners of the fire department, now in office, have made a serious and "manifest" showing that Act No. 20 of the First Extra Session of 1935, which undertakes to change the composition of these boards so that two of the three members of each board shall be appointees of the Governor, violates the provision in section 22 of article 14 of the Constitution, which forbids the Legislature to create any board or commission to control any of the ordinary func-

tions of municipal government in New Orleans, without giving the electors of the city the right to elect the members of the board, either directly or through the municipal council.

The defendants in this suit, who are seeking to go into office under authority of the act of 1935, have not suggested any substantial reason why the act is not unconstitutional. No reason is suggested in the prevailing opinion rendered in this case as to why the act may not be unconstitutional. It is not denied that the Constitution does forbid the Legislature to create any board or commission in New Orleans, with the authority "of controlling the ordinary governmental functions of municipal government." That is the exact language of the Constitution. And it is certain that the function of maintaining a police department and the function of maintaining a fire department are ordinary functions of municipal government.

A municipality whose inhabitants were not allowed to choose their officers who perform the ordinary functions of municipal government would not be a municipality at all, except in name. That is why every Constitution that Louisiana has ever had, except the Constitution of 1868, has contained the guaranty that the Legislature shall not create any board or commission in New Orleans, with authority to control any of the ordinary functions of municipal government, without giving to the electors of the city the right to choose the members of the board or commission.

Article 319 of the Constitution of 1898 and the corresponding article of the Constitution of 1913 contained, substantially, the same pro-

visions which are reserved in section 22 of article 14 of the Constitution of 1921, guaranteeing to the inhabitants of New Orleans the right to choose the members of all local boards or commissions that exercise the ordinary functions of municipal government. In 1916, by Act No. 36 of that year, the Legislature undertook to create a board of public utilities for the city of New Orleans, composed of five members, and to provide that four of the five members of the board should be appointed by the Governor. When the board undertook to regulate the fares to be charged by the street railway company, the company attacked the constitutionality of the statute creating the board, and this court held that the statute was unconstitutional and of no effect because it did not provide that the members of the board should be chosen by the electors of the city. The decision is reported in Board of Public Utilities v. New Orleans Ry. & Light Co., 145 La. 308, 82 So. 280. We cited that decision with approval, on March 20, 1922, in the case of State v. City of New Orleans, 151 La. 24, 91 So. 533, 537, thus:

"The reason why that statute [Act No. 36 of 1916] was declared unconstitutional was that it violated the constitutional right of local self-government. It provided that a majority (four of the five) members of the local public utilities commission, thereby established, should be appointed by the Governor of the state; whereas article 319 of the Constitution of 1898 and of 1913 had reserved to the electors of the city the right to choose all public officers charged with the exercise of the police power of the city, in whole or in part. Observing that the power to fix rates for public utilities was an element of the police power, we held that the Legislature could not confer that power upon a local board, without reserving to the electors of the city the right to choose the members of the board. The convention of 1921, in reserving to the electors of this city the right to choose their public officers—which is the city's sheet anchor for home rule—also reserved to the Legislature the right to provide for local boards or commissions, *without authority, however, to control the ordinary governmental functions of the municipality.*"

I have italicized the expression which shows that this court has decided already that the Constitutional Convention of 1921 preserved for the inhabitants of New Orleans the home rule clause which was in the previous Constitutions, as far as the ordinary functions of municipal government were concerned. The only question, therefore, in one of these cases, is whether it is "manifest" that the maintenance of a police department is an ordinary function of municipal government; and the only question in the other of these cases is whether it is "manifest" that the maintenance of a fire department is an ordinary function of municipal government. Without deciding the question of constitutionality finally, at this time, I am of the opinion that it is sufficiently "manifest" that the maintenance of a police department and the maintenance of a fire department are among the ordinary functions of municipal government, to justify our leaving the present members of these boards in office until the constitutionality of the statute, under which the new members of these boards claim office, can be determined by a *final judgment.*

I do not understand the majority opinion in this case to be that the courts cannot issue a preliminary injunction against the carrying out of an unconstitutional statute. In fact, the authority and duty of the courts to issue a preliminary injunction against the carrying out of a statute that is apparently unconstitutional has never been doubted or disputed, except with regard to criminal statutes; and, as to them, the complainant's right to a preliminary injunction depends upon his having a property right which is about to be invaded. It was so decided by this court in the following cases: Le Blanc v. City of New Orleans, 138 La. 243, 70 So. 212; State ex rel. Tranchina v. City of New Orleans, 141 La. 788, 75 So. 683; Deloney v. Village of Columbia, 142 La. 291, 76 So. 717; Osborn v. City of Shreveport, 143 La. 932, 79 So. 542, 3 A. L. R. 955; Crucia v. Behrman, Mayor et al., 147 La. 144, 84 So. 525; City of New Orleans v. Liberty Shop, 157 La. 26, 101 So. 798, 40 A. L. R. 1136; Tonahill v. Molony, Superintendent of Police, 156 La. 753, 101 So. 130.

The same rule prevails in the federal courts. It was so held in Detroit Creamery Co. v. Kinnane (D. C.) 264 F. 845, and the ruling was affirmed by the Supreme Court of the United States, in a memorandum opinion by Chief Justice White, in 255 U. S. 102, 41 S. Ct. 304, 65 L. Ed. 531.

In the case of Norton v. Shelby County, 118 U. S. 425–454, 6 S. Ct. 1121, 1125, 30 L. Ed. 178, 186, it was said:

"But the idea of an officer implies the existence of an office which he holds. It would be a misapplication of terms to call one an 'officer' who holds no office, and a public office can exist only by force of law. This seems to us so obvious that we should hardly feel called upon to consider any adverse opinion on the subject but for the earnest contention of plaintiff's counsel that such existence is not essential, and that it is sufficient if the office be provided for by any legislative enactment, however invalid. Their position is that a legislative act, though unconstitutional, may in terms create an office, and nothing further than its apparent existence is necessary to give validity to the acts of its assumed incumbent. That position, although not stated in this broad form, amounts to nothing else. It is difficult to meet it by any argument beyond this statement: An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

The decision rendered in the case of State ex rel. Saizan v. Judge, 48 La. Ann. 1501, 21 So. 94, which is cited in the majority in the present case, is not appropriate, because that suit, for an injunction, was not brought by an incumbent of the office, but was brought by the district attorney on his own initiative. He did not contend that the statute under which the three defendants were appointed police jurors was unconstitutional. He contended that the appointments were invalid on the ground that the three police jury wards did not have sufficient population to warrant the appointment of the three additional police jurors. The district attorney, of course, did not have any such interest in the matter as to give him a right of action to question the authority of the Governor to make the appointments. That is all that was decided in that case.

The plaintiffs in this case, who are the members of the boards in office, followed precisely the mode of procedure which was sanctioned by this court in the case of Guillotte v. Poincy, 41 La. Ann. 333, 6 So. 507, 5 L. R. A. 403. In that case, Justice Fenner, for the court, said:

"Proceedings by injunction cannot be used as a means of determining disputed title to office; but they may be properly used to protect the possession of officers de facto against the interference of claimants whose title is disputed, until the latter shall establish their title by the judicial proceeding provided by law.

"The statutes on the subject of intrusion into office clearly contemplate that the claimant of the office is the necessary plaintiff in the action thereby provided, and that the officer de facto in actual possession is the necessary defendant."

It is true that the claimant of the office in that case, out of possession, was not claiming under an apparently unconstitutional statute. But the fact that the claimants of the office in this case, out of possession, are claiming under an apparently unconstitutional statute, is all the more reason why Judge Cage was right in granting to the incumbents a writ of injunction, pending a decision of the right to the office.

Of course, the authority of the courts is controlled by the acts of the Legislature, unless they are manifestly unconstitutional. But the authority of the Legislature, as well as the authority of the courts, is controlled by the Constitution. So that, if an act of the Legislature is manifestly violative of an article of the Constitution, the courts must uphold the article of the Constitution. To maintain that an act of the Legislature that is manifestly unconstitutional must control the authority of the court until the court can declare finally that the act of the Legislature is unconstitutional, in a case where the very question before the court is whether the act of the Legislature is manifestly unconstitutional, would be arguing in a circle, and would be contrary to our system of government.

For the reasons which I have given, I am constrained to decline to sign the decree rendered in this case.