State vs. Natal et als.

## No. 9935.

### THE STATE OF LOUISIANA VS. J. NATAL, ET ALS.

A change in the charter of a municipal corporation, or a substitution of a new charter to the old one, will not be deemed, in the absence of express legislative declaration otherwise. to affect the identity of the corporation.

The city of New Orleans, founded by Bienville in 1718, is identically the city of New Orleans in 1887.

Its present charter, 1882, repeals all laws in conflict or inconsistent with. or contrary to its provisions, and by irresistible implication maintains all special laws, not at such variance with them.

Act 100 of 1878, relative to private markets. in furtherance of which ordinance No. 4798 A S. has been adopted, forbidding private markets within six squares of a public market. is a special law and is not in conflict with the charter of 1882 and has not been repealed. neither has been said ordinance, which being legal, justifies the infliction of fine, etc.. in cases of violation of its prohibitions.

APPEAL from the First Recorder's Court.
 Davey, J.

W. H. Rogers, City Attorney; L. O'Donnell, Assistant City Attorney; and Blanc & Butler for Plaintiff and Appellee.

Belden & Armbruster and S. J. N. Smith for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The defendants appeal from judgments rendered against them for the payment of a fine and in default of payment sentencing them to imprisonment for the violation of ordinance No. 4798 A. S., which forbids the keeping of private markets within *six* squares of a public market within the limits of the City of New Orleans.

The facts are admitted.

Several defences are set up, the main of which is that the law in furtherance of which the ordinance was adopted, as well as the ordinance itself, have been abrogated, annulled and repealed and are no longer in force; that, therefore, the fine imposed under the authority

of the ordinance, is illegal for want of a law and that this court has consequently jurisdiction over the causes.

It is claimed that this repeal results from the adoption of the present city charter, in 1882, with which the law conflicts.

The defendants further urge that the laws of 1878, under the provisions of which the ordinance was passed, contemplated a monopoly and was abrogated by the present charter, and is in violation of the Constitution of the United States.

We consider that these and other objections to the constitutionality or legality of the ordinance in question and others similar to it, have been already considered and judicially determined in favor of the regulation.

Besides, the defendants in the instant cases have not urged them on appeal and may be considered as having abandoned all resistance on those grounds.   Dillon on Mun. Corp. 380, 3 La. 217 ; 4 Ann. 335 ; 27 Ann. 417; 31 Ann. 544; 36 Ann. 986; No. 8603 of the docket of this court, not reported in full; also in cases Nos. 9582, 9583, 9584 not yet reported.

So that, the only question now to be solved is whether the ordinance was or not repealed.

The ordinance in question, No. 4798 A. S., was adopted in 1878, under the provisions of act No. 100 of the Legislature previously adopted in the same year, the object of which was the regulation of private markets in the city of New Orleans. From that time to the present day, it has uniformly been enforced ; what resistance was ever made to its application, having been judicially pronounced groundless and unauthorized.

The defendants in the present controversy however, argue that the city of New Orleans in existence at the date of the passage of the law and of the adoption of the ordinance, has ceased to exist as such, under the operation of act 20 of 1882, which is the charter of the city now in existence ; that said law and said ordinance were not perpetuated, but were ignored and abrogated by the last charter, and that the present prosecutions are attempts to enforce a defunct municipal regulation, in violation of constitutional and statutory law and of the personal rights of the defendants.

The theory thus advanced rests upon the assumed proposition that the city of New Orleans in existence in 1878, is not the city of New Orleans existing in 1887.

This is a fallacy arising from a misconception and a confusion of ideas on the subject.

The city of New Orleans, founded by Bienville about 1718 has never ceased to exist as an agglomeration of human beings for social, commercial and industrial purposes.

It is a growing fact, which no legislation has ever blotted out and which no power can annihilate in a free country, although it be true that the form of government to which its inhabitants have been remitted, or the mode in which it may exercise its rights and powers, has from time to time been modified or changed. It is the *civitas* or *polis* of ancient times.

The inhabitants had a right to congregate and to establish a city for their greater comfort and welfare. In the absence of any charter incorporating them, they are like the rest of citizens in the country ruled by the general laws enacted for the government of all throughout the territory.

In 1805 those inhabitants· were given a charter, for the first time since the cession of 1803, and that charter has been altered or amended some way or other, in subsequent years, viz: 1812, 1818, 1833, 1835, 1837, 1846, 1850, 1852, 1870 and 1882, but the city, the existence of which was generally recognized by the various constitutions, has retained its identity, not only as a matter of fact, but also as a matter of legal necessity.

Whatever rights it originally possessed, whether because expressly conferred by the sovereign or because indispensably inherent to its nature and existence, it has continued to possess, unless where such rights have been recalled or denied by the properly constituted authority.

The present Constitution, Art. 254, gave authority to the General Assembly to cancel its charter and to remit its inhabitants to another form of government, if necessary.

The Legislature did not, however, formally cancel its previous although it changed the form of the municipal government.

This is apparent from the reading of the last section of the charter of 1882, which merely repeals the laws in conflict, inconsistent with or contrary to the provisions of the act.

By irresistible and clear implication, this section contemplates in effect the maintenance and continuation in favor of special laws not falling within the purview of the act, namely not conflicting with it.

It will not do to say that, in the beginning of the act, it is declared that the inhabitants of the Parish of Orleans were *created* a body corporate and established as a political corporation by the name of the City of New Orleans, for the fact is, that the Legislature did not and

could not *create* the city of New Orleans which had existed long before the act of 1882.

To *create* is to bring to life, to animate, to vivify, that which never existed before.

· What the Legislature did was to continue the City of New Orleans as a municipal corporation, and to invest it with powers which it did not previously possess, or to impose on it obligations to which it had not been subjected. The charter is the machinery whereby the city is put in motion and operates.

This is so true that the charter of 1882 transfers to the actual city all the rights, of any nature whatever, which the city then in existence possessed and enjoyed. Sec. 28.

The laws which, from time to time, have been specially framed for the government and administration of the municipal affairs of the City of New Orleans, have, therefore, continued in force, except such as may have been modified or repealed, expressly or impliedly.

The same may be said of such ordinances and regulations as the city may have passed in furtherance of these laws. Hence, when the laws are modified or repealed, the municipal legislation, in pursuance thereof, is altered or recalled; but when those laws remain unchanged, as in the present case, that municipal legislation continues in full force and effect while it remains subject itself to modification by its framers.

This proposition is so palpably evident that it is upon it that the defendants have built up the theory that the act of 1878, under the authority of which the ordinance in question was adopted, having been repealed, the ordinance in question, which is an outgrowth of it, has died away with it.

The city charter of 1882 does not purport to have repealed, in any manner, express or implied, the act of 1878, which is a special law. On the contrary, as that act is in no way in conflict, or inconsistent with, or contrary to the provisions of the new charter, the irresistible inference is that it has continued in full force, and that the ordinance passed in execution of it, to regulate the distance at which *private* markets shall be kept from *public* markets, has likewise continued in effect, and must be enforced in all proper cases.

The conclusions which we have reached are supported by good authority. Dillon on Mun. Corp., 3d Ed., Nos. 171, 172; City of Maysville vs. Schultz, 3 Dana Ky. 11; City of Olney vs. Harvey, Ill. Rep. 50, 454; Trustees Erie Academy vs. City of Erie, Pa. R. 31, 517;

Frank vs. City of San Francisco, 21 Cal. 668; Girard Heirs vs. Philadelphia, 7. Wall 1, and Broughton vs. Pensacola, 93 U. S., p. 266.

In this last case the highest tribunal in the land distinctly held that a change in the charter of a municipal corporation, or the substitution of a new charter in place of the old one, will not be deemed, in the absence of express legislative declaration otherwise, to affect the identity of the corporation.

See, also : Toullier Dr. Cir. Fr., i, i, t, i, No. 202 ; Henry de Pansey, Pourin Municipal, pp. 36, 37 ; also, 2 Woods 632, Milners' Admrs. vs. Pensacola.

It is, therefore, ordered and decreed that the judgments appealed from be affirmed, with costs.