(44 South. 279.)

No. 16,644.

MURAT v. CITY OF NEW ORLEANS.

In re MURAT.

·(May 27, 1907. Rehearing Denied June 28, 1907.)

MANDAMUS—GRANT OF INJUNCTION—ENFORCE-MENT OF ORDINANCE.

The authority conferred on the Supreme ·Court, by article 94 of the Constitution, to .grant remedial writs in the exercise of a super-visory jurisdiction, should be only exercised in special emergency cases, and in order to prevent .great impending present injury. A case of this kind is not disclosed in this application.

[Ed. Note.—For cases in point, see Cent. Dig. ·vol. 13, Courts, § 613.]

(Syllabus by the Court.)

Application of Jean Murat for writs of ·certiorari, mandamus, and prohibition to the ·city of New Orleans. Application for writs ·dismissed.

E. Howard McCaleb and E. Howard McCa-leb, Jr., for relator. Respondent Judge, pro ·se. St. Clair Adams, Asst. City. Atty., for re-·spondent city of New Orleans.

NICHOLLS, J. In the application of the relator to this court, he alleged that he had filed in the civil district court for the par-ish of Orleans a petition, in which he aver-red that he was the owner of certain prop-erty in the city of New Orleans, which he described, which he purchased on the 11th of March, 1882; that shortly after his pur-chase he established upon it a dairy, and he has since that date been carrying on a dairy and supplying his customers in the city with milk and the products thereof; that at the time he purchased said property and estab-lished his dairy thereon there was no law or ordinance of the city prohibiting him from so doing, but, on the contrary, he was within the permission and protection of the law and ordinances then existing and in operation; that on or about the 4th day of May, 1897, it is asserted and averred that the council of the city of New Orleans passed an ordinance, which was approved by the mayor on May 6, 1897, and promulgated on the 7th of May, 1897, which ordinance he copied in full in his petition; that the city of New Orleans, through its officers, agents, and representa-tives, now threatens to enforce the provisions of said pretended ordinance, especially sec-tion 2 thereof, and to compel relator to re-move from the location described, now occu-pied by him, into the new limits established by said ordinance, and to enforce section 3 of said ordinance by the arrest, trial, and con-viction before any recorder of competent jurisdiction and sentence to pay a fine of $25, and in default thereof, imprisonment for 30 days, or both, at the discretion of the court; that the enforcement of said ordi-nance and the threatened compulsory remov-al of your petitioner from his property now used by him as a dairy will work him great and irreparable injury, depreciate the value of his property, and cause him a loss exceed-ing $3,600 per annum; that said property so occupied by petitioner's dairy is located in

the suburbs of the city, sparsely settled and the business of dairymen carried on by petitioner works no injury or harm to any one; and that no complaint has ever been made against said dairy so established and carried on by your petitioner.

"(1) Now your petitioner charges and avers that said ordinance is illegal, invalid, unreasonable, oppressive, and contrary to the Constitution and laws of this state.

"(2) That said ordinance is violative of the city charter, in this, that by its provisions a portion thereof is to go into effect from and after its adoption, and other portions within 10 years from the promulgation of said ordinance. That the city council was without power or authority to postpone the execution and the taking effect of said ordinance 10 years after the promulgation thereof, to the great wrong and injury of petitioner.

"(3) That Act No. 45, p. 57, approved July 7, 1896, known as the 'City Charter' (section 28) provides:

" 'All ordinances and resolutions * * * after having been passed by the council, shall be transmitted to the mayor for his consideration who, if he shall approve thereof, shall sign and publish the same and such ordinances and resolutions shall thereupon have the force of law'—which provision was directly violated by postponing the execution and the taking effect of said ordinance.

"(4) That said council could not anticipate the conditions existing in this city 10 years in the future after the passage and promulgation of an ordinance, and in the meantime suspend its effect and execution.

"(5) That the conducting and carrying on of the business of a dairy is not a nuisance per se, and could only become a nuisance if not constructed, kept, and used in a proper manner, as petitioner's business was and is.

"(6) That said ordinance in restricting said limits is not directed against dairies improperly kept or used, but against all dairies within the prescribed limits, though said dairies are not nuisances.

"(7) That said ordinance is likewise unreasonable because at the time of its passage and promulgation on May 7, 1897, it appears therefrom that the dairies then located were not nuisances and there was no immediate pressing necessity for the enactment and execution of said ordinance and the postponement of the time for 10 years after the termination of which said ordinance should go into effect. That the conditions then prevailing have not since changed or altered up to the present time.

"(8) Petitioner avers that the business located by him at said place is a legitimate business, and that the same had been fully licensed by the city and state, and petitioner has paid city and state licenses therefor, and that the right possessed by petitioner to carry on said legitimate business is well worth to him a sum exceeding the amount of two thousand dollars ($2,000.00), and the enforcement of said ordinance will cause him continuing damage, deprive him of the revenues from said dairy and from the use and enjoyment of said property, and diminish the value of the same, which loss and damage to petitioner will be largely in excess of said sum of two thousand dollars ($2,000.00).

"(9) That said ordinance denies to petitioner the equal protection of the laws, and deprives petitioner of his property without due process, in violation of the Constitution and laws of this state and of the United States, especially the fourteenth amendment thereof."

In view of the premises, "petitioner prays that a writ of injunction do issue herein conditioned as the law directs upon petitioner executing bond with good and solvent security for such amount as the court shall determine directed to the city of New Orleans, its mayor, officers, and employés, enjoining, forbidding and prohibiting them, and each of them, from enforcing the provisions of Ordinance No. 13,335, Council Series, especially sections 1, 2, and 3, and in any way interfering with your petitioner in the conduct and carrying on of his said dairy at the locality above mentioned, and from causing petitioner's arrest, trial, and conviction for the violation thereof.

"That the city of New Orleans, through Martin Behrman, its mayor, be cited to appear and answer this petition, and after due proceedings said injunction be maintained and perpetuated and said ordinance be declared unreasonable, oppressive, illegal, invalid, unconstitutional, and void. And petitioner prays for all general and equitable relief and as in duty bound will ever continue to pray.

"That defendant, the city of New Orleans, was duly cited to appear and answer this petition and ordered to show cause on the 3d day of May, 1907, why the writ of injunction prayed for in said petition should not issue. That on the 2d day of May, 1907, the city of New Orleans appeared and filed an exception of no cause of action to said petition and order to show cause why the injunction should issue. That after due hearing before the Honorable George Theard, judge of the civil district court for the parish of Orleans, division E, the application for said writ of injunction was taken under advisement. That on the 17th day of May, 1907, the said Honorable Geo. H. Theard, judge of the civil district court, division E, refused to issue said preliminary writ of injunction prayed for in said petition, and sustained the exception of no cause of action filed by defendant. Whereupon your relator gave due notice of this application for writs of mandamus and prohibition, which notice has been served upon the said judge and upon the adverse parties.

"Now your relator shows that, under the allegations of said petition duly sworn to, he is entitled to a preliminary writ of injunction, and that refusing to grant said preliminary writ of

injunction will work great damage and irreparable injury upon him.

"That relator had no remedy or relief but by this writ of mandamus and prohibition from this honorable court to compel Hon. Geo. H. Theard, judge of the civil district court for the parish of Orleans, division E, to grant said preliminary writ of injunction as prayed for in said petition.

"That the action of said Hon. Geo. H. Theard, judge, in refusing to grant said preliminary writ of injunction, is arbitrary and contrary to law.

"That a writ of prohibition from this honorable court is necessary in the premises to protect the rights of relator.

"That the city of New Orleans will attempt to execute the illegal and unreasonable ordinance referred to in the foregoing petition in said cause, and will proceed to cause relator's arrest under said illegal ordinance, in violation of his rights. That a writ of mandamus from this honorable court is necessary and requisite in the premises to compel the granting of said preliminary writ of injunction."

The prayer of relator's petition was that a writ of mandamus issue directed to the judge of division E of the civil district court, commanding him to grant him a preliminary injunction, and for the amount of the bond as prayed for in the petition referred to prohibiting the city of New Orleans, its mayor, officers, and employés, and each of them, from enforcing the provisions of Ordinance No. 13,335, Council Series, especially sections 1, 2, and 3, and in any way interfering with relator in the conduct and carrying on his said dairy belonging to him, in this city, and from causing relator's arrest, trial, and conviction for the violation thereof, or that he show cause to the contrary, if any he can or have, on such a day, and at such an hour as this honorable court may order directed to the city of New Orleans, its mayor, officers, and employés, enjoining, restraining, and prohibiting them, or either of them, directly or indirectly, or through any agent, deputies, or employés, from executing or attempting to execute or enforcing, or attempting to enforce, the provisions of Ordinance No. 13,335, Council Series, especially sections 1, 2, and 3, and in any way interfering with relator in the conduct and carrying on his said dairy in

the city of New Orleans, and from causing relator's arrest, trial, and conviction, for the violation of said Ordinance No. 13,335, Council Series, all as prayed for in the matter of Jean Murat v. The City of New Orleans, No. 82,449 of the docket of the civil district court for the parish of Orleans, division E, or that they show cause to the contrary, if any they can or have, on such a day and at such an hour as this honorable court may assign, and after due trial and proceedings had that said writs be made peremptory and perpetual. And further that a writ of certiorari do issue herein commanding the Hon. Geo. H. Theard, judge, to send up to this court all the proceedings had in said cause, and that upon due hearing the said writ of mandamus, prohibition, and certiorari herein prayed for be granted, and that a writ of prohibition likewise do issue to Hon. Geo. H. Theard, judge, commanding him not to proceed any further in said cause until the further orders of this honorable court. Relator further prayed for costs and for general relief.

On reading the petition, the district judge was ordered to show cause why the writs prayed for should not issue, and all parties in interest were ordered to be notified. The district judge was ordered to send up all the proceedings in the case before him.

He has done so, with the statement that said proceedings included the written opinion containing the reasons assigned by him for denying the injunction prayed for; the city of New Orleans assigning reasons why the relief prayed for should be refused.

The district judge assigned the following as the reasons on which he based his judgment:

"The power to prescribe where dairies must be located, and how they shall be maintained, comes well within the police power which may be delegated to municipalities by the state. Dillon on Municipal Corporations (4th Ed.) vol. 1, § 181; Tiedeman on State & Federal Control, etc. vol.

2, p. 740; City of Faber, 105 La. 208, 216, 29 South. 507.

"The delegation of authority to the city of New Orleans on the subject is to be found in its charter. Act No. 45 p. 53, § 14, of 1896: 'The city shall have power * * * to regulate the location and inspection and cleansing of dairies, stables. * * *'

"The right of the city under this grant of power, which is full and complete, to enact legislation with reference to the location and maintenance of dairies, is not seriously contested by plaintiff; but it is contended that whatever ordinance may be adopted on the subject must be effective immediately upon its promulgation, and that the city council is without authority to provide that it shall take effect in part or in whole at some future time. Section 28 of the city charter, already quoted, is relied on in support of this contention. Thus, according to plaintiff, if section 2 had been omitted from Ordinance 13,335, and if he had been compelled to remove his dairy at once, he would have had no cause of complaint; but, forsooth, because the city council from a sense of equity, in order to lessen the hardship attendant upon the diversion of his property to other uses, granted him a delay of 10 days to secure another location for his dairy, the ordinance must be held illegal and unreasonable. This proposition is clearly untenable. As law prescribes for the future, there is no reason to prevent its being made to take effect at a fixed time after its enactment, particularly when it provides for the regulation of property. 'The power to enact laws includes the power, subject to constitutional restriction, to provide when in the future, and upon what condition or event, they shall take effect.' Sutherland on Statutory Construction, § 107, and authorities cited.

"It is next argued that the ordinance is unequal in its application, because, at the same time that it declares it unlawful to establish dairies within certain limits, it allows those already established to continue, thereby discriminating in their owners' favor.

"The discrimination complained of does not impair the validity of the ordinance.

"'It is obvious that a restrictive or prohibitive measure under the police power must operate very differently upon those who have invested property or acted otherwise in reliance upon the former condition of the law, and those who have not yet committed themselves in this manner. The loss and sacrifice which the measure entails upon the former exceeds by far the burden placed upon the latter. While an exception in favor of the former will, of course, create a discrimination in the operation of the measure, such discrimination may be a dictate of equity, and may even be demanded by a due regard for constitutional rights. * * * Thus increased stringency in the regulation of liquor saloons are generally made applicable to existing places, and are not confined to those to be opened in the future; but, where the regulation refers to location, establishments previously lo-

cated are properly excepted.' Freund on Police Power, pp. 705, 706, § 683.

"'Thus the establishment of fire limits within which frame buildings are forbidden is a regulation as applied to vacant property, while as to existing frame houses it would be a taking of property; hence the exemption of such houses is not only not contrary to, but is demanded by, the Constitution.' Id., end of section 685.

"Says our Supreme Court, in City v. Smythe, 116 La. 685, 688, 41 South. 33, 6 L. R. A. (N. S.) 722, applying a similar doctrine:

"'It is, however, argued in the case at bar that the ordinance discriminates in favor of persons conducting barrooms, saloons, etc., already established at the date of its adoption. This argument denies to the Legislature the power to discriminate between persons already lawfully pursuing an occupation subject to the police power, and persons who may thereafter seek to engage in the same occupation. Such a contention, if admitted, would prevent the Legislature from requiring additional qualifications for persons desiring to engage in many callings and professions which cannot be carried on without a previous permit or license. A number of statutes in this state requiring persons to procure a permit before engaging in certain pursuits exempt those already actually so engaged. A cursory examination of our statutes shows that this exemption has been extended to physicians, pharmacists, and pilots. We are not aware that statutes of this kind have ever been declared void as denying the equal protection of the law. They recognize the distinction between persons actually engaged in certain callings from which they obtain a livelihood and in which they may have invested capital, and persons not so engaged. The two classes are not similarly situated; the one having rights already vested, or at least recognized by law, and the other but some hope or expectation of embarking in the same calling at a future day.'

"This reasoning applies with greater force to the ordinance attacked, because already existing establishments are not suffered to continue for all time; but, on the contrary, it is ordained that they shall be removed within 10 years, at the end of which time their owners are to be on no better footing than other dairymen.

"If, however, there be in the ordinance such discrimination as to make it unequal in its application, plaintiff, who is in the favored class, and who for the past 10 years has accepted and enjoyed the benefit of the discrimination, is absolutely without standing in court to urge its illegality. Only those who are discriminated against are to be heard to complain.

"The further contentions of plaintiff that the police power over dairies extends only to such as are nuisances, and that the ordinance destroys his vested rights and deprives him of his property without due process of law, are set at naught by the case of City v. Faber, supra, and the authorities therein cited.

"The last objection to the ordinance, namely, that it is unreasonable because the city council

could not anticipate the conditions that would exist in this city 10 years ahead, is not better founded. The councilmen, who considered that the public health would be endangered by allowing the establishment of additional dairies without the populous area of the city, would easily foresee that in the course of 10 years the danger would so increase with the growth of the population as to make it imperative to exclude all dairies from said area. They acted within their rights when they exercised the police power pro re nata for immediate effect as well as prospectively for the prevention of the apprehended danger. City v. Stafford, 27 La. An. 417, 21 Am. Rep. 563.

"Had their provision not been realized, however, had the conditions been unchanged, and had the population remained stationary, the present council, at the expiration of the 10 years, would surely have recognized the propriety of so modifying the ordinance as to grant a further delay to plaintiff and others similarly situated.

"This disposes of all the contentions urged by plaintiff before me in argument. In none of the cases referred to in the course of this opinion was legislation on the subject of dairies involved; but they all bear on kindred subjects equally embraced within the police power, and the principles therein enunciated have appeared to me applicable to dairies as well."

Counsel for the city refers the court to the following authorities, urging that the true remedy of relator was by an appeal, and he urges that the ordinance in question was a health measure: Code Prac. art. 230; authorities cited in Wolff's Revision of Garland's Code of Practice; State ex rel. City of New Orleans v. Judge, 32 La. Ann. 549.

The only question which we are presently called upon to act is whether under the condition and situation of affairs shown by the record we can properly exercise the power conferred upon us by article 94 of the Constitution, and compel a judge to grant an injunction which he had judicially refused to grant after hearing the parties in interest. We have, on a number of occasions, referred to the very broad supervisory authority placed in our hands by the article of the Constitution referred to; but we have always recognized it as one to be very exceptionally invoked and resorted to, particularly where other methods for relief have been given

by the lawmaker. In State ex rel. Murray v. Lazarus, 36 La. Ann. 582, we said:

"It does not follow, because this court has such power to interpose its authority in cases of emergency and denials of justice, it will thus interfere whatever be the case presented. It will issue the writ according to the exceptional features of each case presented."

Mr. Justice Manning, as the organ of the court in State ex rel. Morgan's Railroad Co. v. Judge, 36 La. Ann. 394, used the following language:

"While the range of cases in which we can issue the writ is thus enlarged, it does not follow that it may be invoked always, instead of an appeal. It would revolutionize our jurisprudence to hold that every right that was formerly enforced by appeal, and every wrong that was formerly redressed by appeal, can now be enforced or redressed by mandamus when an emergency seems to require or invite it. The relator urges that the remedy by appeal is too slow, that parties were relegated to that remedy under former Constitutions because of the lack of that supervisory control which we now have, and which he conceives to have been given to us in order that we may compel the judge to decide as we should decide were the case before us. This would be a short road between the lower and the appellate court that would soon be blocked by the crowd of traveling litigants."

The injunction which relator sought was not one to which he was entitled as a matter of absolute right—one which it was incumbent on the judge to grant as a matter of absolute duty. It was one which the judge could grant or refuse in the exercise of his judicial discretion. He has not declined to act at all upon the petition which was presented to him. He has heard the litigants and decided that the writ should not be granted in limine. We do not think the case is one which presents a case of emergency —one where temporary delay would work irreparable injury. The city has as yet taken action neither criminal nor civil against the relator. What action it will have recourse to we do not know. Whatever that action may be, relator will have the legal opportunity at that time to safeguard whatever rights

he may have by legal proceedings. Injury could not be precipitated upon him before the district court, or this court could protect him. As the matter in dispute involves the power and authority of the common council to enact the ordinance complained of, a constitutional method has been provided by which relator will be enabled to check in due time any unauthorized or illegal exercise of municipal power. We do not think that this case calls for the exercise of our supervisory power in the premises.

For the reasons assigned, it is hereby ordered that the orders of this court heretofore granted herein be set aside, and relator's application for the writs prayed for is hereby dismissed.