SOMMERVILLE, J.
Relator, D. J. Tranehina, invokes the supervisory jurisdiction of the court, and asks that a mandamus be directed to the district judge to compel him to issue a preliminary injunction in a certain cause filed by him against the city of New Orleans enjoining it:
“From further interfering with the petitioner in the aforenamed (restaurant) business, or from further attempting to enforce the null, void, and unlawful (city) ordinance, as being in contravention to and in violation of section 1 of the fourteenth amendment of the Constitution of the United States. That it may please the court to grant a temporary injunction restraining the city of New Orleans, its mayor, commission council, or its employes, officers, attorneys, agents, police, and representatives of every kind and grade from arresting your petitioner or from enforcing or seeking to enforce Ordinance No. 4221 of the commission council series during the pendency of this cause, or from any way interfering, harassing, injuring, or obstructing your petitioner from the conducting of his lawful business, and that on final trial said injunction be sustained and perpetuated.”
*791 Ordinance No. 4221, above referred to, forbids public entertainments, and music in public places, without having applied for and obtained a permit authorizing same from the mayor. The ordinance is set forth by the plaintiff in his petition as follows:
“Be it ordained by the commission council of the city of New Orleans that it shall be unlawful to keep any piano, organ or other musical instrument whatsoever for the purpose of performing upon or having same performed upon in any public park or place of public resort, recreation, or in any regularly licensed theater or restaurant, or having any other character of entertainment in such places unless and until the applicant shall have first applied for and obtained from the mayor of the city of New Orleans, a permit authorizing musical or other form of entertainment in such places.
“Be it further ordained, etc., that any person or persons, firm or corporation violating any of the provisions of this ordinance shall be subject to a fine of not less than $10.00, nor more than $25.00, or imprisonment for not less than 10 nor more than 30 days or both, and each clay’s violation of any of the provisions of this ordinance shall constitute a separate and different offense and punishable as such accordingly.”
Plaintiff alleges that be is the owner and proprietor of a restaurant at the corner of Howard avenue and Carondelet street, in the city of New Orleans; that he has paid licenses for conducting said business to the state and city; that he has paid the state for the privilege of having music in the restaurant; that it is necessary for the successful carrying on of his business that he should entertain his guests with music, which he has undertaken to do at great expense to him; and that others have done the same thing who are engaged in like pursuits. He then states that “he is to be punished by the city in accordance with the provisions of section 2 of this ordinance,” but he does not proceed to state what the consequences might be, or that the city authorities have threatened him with arrest or punishment, or that the ordinance is to be enforced against him.
Petitioner then avers that the ordinance referred to is null and void for several reasons, but he does not ask that the same be declared null and void.
He says that the council of the city of New Orleans has no power to pass said ordinance, and that the same is ultra vires; that it is oppressive, unreasonable, unjust, and illegal; that by the terms of Act 223 of 1916 he is given permission to have music in his restaurant, on the payment of a $25 license to the state, which he has paid; and that the ordinance makes one governmental officer omnipotent, in that he can in his discretion repeal the act of the lawmaking power of the state, by declaring, without his consent, the privilege accorded by the state of Louisiana to be without effect; that the Act 223 is repealed by the ordinance, and to proceed under the act is made an offense against society, punishable by a fine and imprisonment; that the ordinance is violative of article 168 of the Constitution of Louisiana, which provides that “no power of suspending the laws of this state shall be exercised unless by the general assembly”; that it deprives petitioner of his property without due process of law; that it denies to him the equal protection of the law, and liberty of pursuit in following his chosen calling; that it does not affect ail of the citizens engaged in the same line of business alike; that it vests the mayor of New Orleans with discretionary power to impede or harass one individual as his discretion may dictate, or grant privileges to another individual; that the enforcing of this ordinance by arrest will completely ruin his business and destroy an investment of $20,000; that the denial of the right accorded him by the state to have music in his restaurant, and the giving of such a right to his competitors, has reduced his receipts from the 3d of March, 1917, to the 15th day of March, 1917, the sum of $1,740; that he has requested a permit to have music in his restaurant, and that said permit was denied to him without a reason; “that under *793 the conditions threatened any effort on the part of your petitioner to protect his liberty and property will necessarily lead to and involve him in a multiplicity of suits at a heavy expense and grave inconvenience without affording adequate remedy.”
The district judge issued a rule nisi, and after hearing the argument he declined to issue the preliminary injunction prayed for, on the ground that the petition did not disclose a cause of action therefor. And, in his return made to the rule nisi issued in this cause by this court, the district judge said: The city showed on its return to the rule nisi that by paragraph “e” of section 1, par. 13, of section 8, and paragraph 10 of section 8, of Act 159 of 1912, the commission council had power:
“To regulate the police of theaters, public halls, dance houses, concert saloons, taverns, saloons, hotels, houses of public entertainment, houses of prostitution and assignation, and to close such houses from certain limits, and to have power to exclude the same, and to close houses and places for the sale of' intoxicating liquors when public safety may require it, and to authorize the mayor and police to close such places.”
And that the ordinance referred to is one to regulate the police of public entertainment. He further showed that the petition does not set forth any ground for an injunction under articles 298 and 302 of the Code of Practice, but that it sets forth grounds falling under article 303 of the Code, investing him with full discretion in such matters; that he tried the rule nisi on the face of the papers, that is, the petition of the plaintiff and the return of the defendant to the rule, without the other “papers or documents which the relat- or has annexed to his demand herein,” and which have been filed in this court.
In his return, the district judge said that:
“It did not appear to this respondent that the petitioner sought any definite relief, that is, relief against any definitely stated wrong or injury done or threatened to be done, and whereby he would sustain irreparable damage. He averred in his petition that the ordinance complained of was null and void; he did not ask to have it annulled or declared to but null. He asked the court to enjoin ‘the city of New Orleans, its mayor, council, officers, attorneys, agents, police representatives of every kind and grade’ from arresting him or enforcing or seeking to enforce said ordinance — by this omnium gatherum practically asking the enjoining of the recorders of the city from taking cognizance of a matter for which they have jurisdiction by the Constitution and laws of the state and in whom reside not only power to punish violators of municipal law, but also to determine the legality and constitutionality vel non of municipal legislation in the first instance, subject to appeal to this honorable court.
“However, that a judge of the civil district court should enjoin the mayor and other officers from executing the said ordinance, which it is their duty to enforce, seems to me to require a case where it was clearly shown that a right of property (a real right) was being violated, and injury being done or about being done not compensable in money, and that there should be threats of arrest and impending incarcerations, in addition to having an ordinance before him which the judge should consider on a mere preliminary examination to be manifestly null and void.
“The case coming up on the face of the papers, it appeared from the petition that the plaintiff acquiesced in the status it presented by refraining from violating the ordinance; that no right of property was taken from him, or impaired; that there was no closing up, either his restaurant or contiguous saloon; that no officer of the law or agent of the city was harassing him, interfering with his business, or threatening to hale him before a recorder.
“Considering all these things, and considering the return that the ordinance was passed in exercise of the police power amply given to the commission council under the following provisions of the charter of the city of New Orleans, act 159 of 1912, to wit:
“ ‘The city shall * * * have all powers, privileges and functions which, by or pursuant to the Constitution of this state, have been, or could be, granted to or exercised by any city.’ (Paragraph “e,” § 1.)
“ ‘The commission council shall also have power: * * * exercise general police power in the city of New Orleans.’ (Section 8, par. 13.)
“ The commission council shall also have power * * * to regulate the police of theaters, public halls, dance houses, concert saloons, taverns, hotels, houses of public entertainment, shops for retailing alcoholic liquors, houses of prostitution and- assignation, and to close such houses from certain limits, and shall have power to exclude the samé, and to close houses and places for the sale of intoxicating liquors when the public safety requires it, and to authorize the mayor and police to close such places.’ (Paragraph 10, § 8.)
“And the further return that plaintiff operates a saloon adjoining the restaurant, which is not *795 in a building owned by him, and which is situated in a neighborhood with a church or synagogue nearby; and further considering that the said ordinance is not manifestly null, as in the Base Ball Park Case, 118 La. 228, 42 South. 784, where a right of real property was seriously infringed ; that the ordinance was intended to be regulatory and not prohibitory of ‘houses of public entertainment,’ and was of the character of the ordinance mentioned in Yick Wo v. Hopkins, 118 U. S. 368 [6 Sup. Ct. 1064, 30 L. E.d. 220], where approval is made of ‘the not unusual ease, where discretion is lodged by law with public officers or bodies to grant or withhold licenses to keep taverns or places for the sale of spirituous liquors, and the like, when one of the conditions is that the person shall be a fit person for the exercise of the privilege, because in such cases the fact of fitness is submitted to the officer and calls for the exercise of a discretion of a judicial nature’; and considering further that no property or real property right was destroyed, and no injury inflicted not compensable in money damages; and considering the vague and general allegations of injury or disturbance in the use of property is insufficient to justify an injunction ([Otis v. Sweeney] 48 La. Ann. 940 [20 South. 229]); and considering that the city administration, with manifest public approbation was seeking to safeguard public morals and welfare — I thought it inadvisable to grant a preliminary injunction, leaving the final determination of the validity of the ordinance and the granting of the writ to a hearing on the merits.
“Directing attention to the fact that the ordinance in question does not provide for the closing of the petitioner’s restaurant, or for any interference by the officers of the law or agents of the city with the conduct of the petitioner’s business, and that there is no showing or pretense that the officer's or agents of the city, acting under this ordinance, have done any of these things or threatened to do them, I beg to refer this honorable court to what it has said in the Murat Case apropos, to wit:
“ ‘The injunction which relator sought was not one to which he was entitled as a matter of absolute right — one which it was incumbent on the judge to grant as a matter of absolute duty. It was one which the judge could grant or refuse in the exercise of his judicial discretion. He has not declined to act at all upon the petition which was presented to him. He has heard the litigants and decided that the writ should not be granted in limine. We do not think the case is one vMiicfr presents a case of emergency —one where temporary delay would work irreparable injury. The city has as yet taken action neither criminal nor civil against the relator. What action it will have recourse to we do not know. Whatever that action may be, relator will have the legal opportunity at that time to safeguard whatever rights he may have by legal proceedings. Injury could not be precipitated upon him before the district court, or this court could protect him. As the matter in dispute involves the power and authority of the common council to enact the ordinance complained of, a constitutional method has been provided by which relator will be enabled to check in due time any unauthorized or illegal exercise of municipal power. We do not think that this case calls for the exercise of our supervisory power in the premises.’ ” Murat v. City, 119 La. 514, 515, 44 South. 283.
The district judge concludes his return by citation of other authorities to the same effect.
In his petition for a mandamus, addressed to this court, relator alleges that the officers of the city “ ‘have disturbed’ and are continuing to ‘disturb’ relator in the ‘actual and real possession’ and use of his property, which he has had for a number of years, and ‘has disturbed’ and is continuing to disturb him ‘in the possession’ and the legitimate exercise of ‘a real right of which he claims the enjoyment’ ” and alleges that he is entitled to a writ of injunction as a matter of right, and that the district judge was without right to deny the preliminary injunction asked for by him.
Plaintiff made no such allegation in his original petition to the district court. He did not allege that the city had “disturbed” him or his business, that he had been threatened, or that the ordinance had been enforced.
Neither did plaintiff allege, in his original petition, that he was applying for an injunction under article 298, Code of Practice, although he makes such claim in his petition to this court for a mandamus.
Article 298 of the Code of Practice sets out the cases upon which an injunction must be granted; and among them is found, in paragraph 5:
“When the defendant disturbs the plaintiff in the actual and real possession which such plaintiff has had for more than one year, either of a real estate, or of a real right, of which he claims either the ownership, the possession or the enjoyment.”
Plaintiff did not set up in his petition, as found by the district judge, that he had been *797 disturbed by the defendant, either directly or indirectly, in the actual and real possession of his real estate, or of a real right, of which he claimed the ownership, the possession, or the enjoyment.
The claim in plaintiff’s petition is that there exists an ordinance of the city of New Orleans, which he asserts, if enforced, would deprive him of the right of having music in his restaurant, where a similar right had been granted to others in the same line of business; but he does not claim that the ordinance was being executed, or that he had been threatened by the defendant with an execution of the same. And, if such threats had been alleged, it would not have disturbed the plaintiff of any actual or real possession “either of a real estate or of a real right.” The ordinance does not provide for the closing of plaintiff’s business in the advent that he has music therewith, without a permit from the mayor. It simply says that a permit from the mayor is necessary to have music in connection with the business of public entertainments.
The original petition was evidently drawn under the provisions of article 303 of the Code of Practice, which provides for the issuance of injunctions “in all other cases wherein it is necessary to preserve the property in dispute during the pendency of the action, and to prevent one of the parties, during the continuance of the suit, from dilapidating the same, or from doing some other act injurious to the other party.”
[1-4] The district judge had, in his. discretion, the power to refuse to issue the injunction as prayed for by plaintiff; and that discretion will not be interfered with, under the supervisory jurisdiction of this court, in a case involving the enforcement, or non-enforcement, of a police ordinance of a municipality, unless, as stated in the syllabus of the case of Le Blanc v. City of New Orleans, 138 La. 243, 70 South. 212:
“In such case no injunction should be granted unless there be found three concurring conditions, to wit, the invasion of a property right must be clearly shown, the unconstitutionality or illegality of the ordinance must be manifest, and the judge must be satisfied that the applicant is threatened with irreparable injury, against which the law, as administered in the courts vested with jurisdiction of the prosecution, affords no adequate remedy. If either of these conditions is lacking, the civil district court is without jurisdiction to issue the writ.”
The three concurring conditions referred to above do not exist in this case. Plaintiff’s property rights are not shown to have been invaded: the ordinance complained of is not manifestly unconstitutional or illegal; and, as the judge of the district court said, the plaintiff was not threatened with irreparable injury, against which the law, as administered in the courts vested with jurisdiction of the prosecution, affords no adequate remedy.
In the case of Murat v. City of New Orleans, 119 La. 505, 44 South. 279, it is stated in the syllabus:
“The authority conferred on the Supreme Court, by article 94 of the Constitution, to grant remedial writs in the exercise of a supervisory jurisdiction, should be only exercised in special emergency cases, and in order to prevent great impending present injury.”
And in the course of the opinion, quoting from State ex rel. Murray v. Lazarus, 36 La. Ann. 582, it is said:
“It does not follow, because this court has such power to interpose its authority in cases of emergency and denials of justice, it will thus interfere whatever be the case presented. It will issue the writ according to the exceptional features of each case presented.”
And quoting again from State ex rel. Morgan’s Ry. Co. v. Judge, 36 La. Ann. 394:
“ ‘While the range of cases in which we can issue the writ is thus enlarged, it does not follow that it may be invoked always, instead of an appeal. It would revolutionize our jurisprudence to hold that every right that was formerly enforced by appeal, and every wrong that was formerly redressed by appeal, can now be enforced or redressed by mandamus when an emergency seems to require or invite it. The relator urges that the remedy by appeal is too slow, that parties were relegated to that remedy under former Constitutions because of the lack of that *799 supervisory control which we now have, and which, he conceives to have been given to us in order that we may compel the judge to decide as we should decide were the case before us. This would be a short road between the lower and the appellate court that would soon be blocked by the crowd of traveling litigants.’
“The injunction which relator sought was not one to which he was entitled as a matter of absolute right — one which it was incumbent on the judge to grarit as a matter of absolute duty. It was one which the judge could grant or refuse in the exercise of his judicial discretion. He has not declined to act at all upon the petition which was presented to him. He has heard the litigants and decided that the writ should not be granted in limine. We do not think the case is one which presents a case of emergency-one where temporary delay would work irreparable injury. The city has as yet taken action neither criminal nor civil against the relator. What action it will have recourse to we do not know. Whatever that action may be, relator will have the legal opportunity at that time to safeguard whatever rights he may have by legal proceedings. Injury could not be precipitated upon him before the district court or this court could protect him. As the matter in dispute involves the power and authority of the common council to enact the ordinance complained of, a constitutional method has been provided by which relator will be enabled to check in due time any unauthorized or illegal exercise of municipal power. We do not think that this case calls for the exercise of our supervisory power in the premises.”'
The quotation just made from the Murat Case is entirely applicable to the case now under consideration, and it disposes of the application for the mandamus made by the relator herein.
“There are such trades and occupations which, for various reasons, by consensus of opinion among all civilized people, are within what is called the ‘police power,’ and the reason for their doing so is so deep seated as to have become a matter of law as well as of fact.”
And the regulation of places of public entertainment clearly falls within the police power of a municipality.
In the case of the City of New Orleans v. Stafford, 27 La. Ann. 417, 21 Am. Rep. 563, it is said:
“There is in the defendant’s case no room for any well-grounded complaint of the violation of a vested private right; for the privilege, if he really possess it, of keeping a private market, was acquired subordinately to the right existing in the sovereign to exercise the police power to regulate the peace and good order of the city, and to provide for and maintain its cleanliness and salubrity. * * * We presume that it will not be denied that under circumstances of peril and emergency the lawmaker would have the right to abolish or suspend an occupation imperiling the public safety. This power is inherent in him. He may exercise it prospectively, for prevention, as well as pro re nata, for immediate effect. It is within his discretion when to exercise this power; and persons under license to pursue such occupations as may, in the public need and interest, be affected by the * * * police power, embark in those occupations subject to the disadvantages which may result from a legal exercise of that power.”
See, also, Morano v. Mayor, 2 La. 219; First Municipality v. Cutting, 4 La. Ann. 335; State v. Gisch, 31 La. Ann. 544; City of New Orleans v. Wolf, 36 La. Ann. 986; State v. Natal, 38 La. Ann. 967; Id., 39 La. Ann. 439, 1 South. 923; Gossigi v. City of New Orleans, 41 La. Ann. 522, 6 South. 534; State v. Garibaldi, 44 La. Ann. 809, 11 South. 36; Natal v. Louisiana, 139 U. S. 621, 11 Sup. Ct. 636, 35 L. Bd. 288, Judge Dillon says upon this subject:
“Many of the powers exercised by municipalities fall within what is known as the ‘police power’ of the state, and are delegated to them to be exercised for the public good. Of this nature is the power to suppress nuisances, preserve health, prevent fires, to regulate the use and storage of dangerous articles, to establish and control markets; and the like. * * * Every citizen holds his property subject to the proper exercise of this power either by the state Legislature directly, or by public or municipal corporations to which the Legislature may delegate.” 1 Dill. Mun. Corp. (4th Ed.) par. 141.
It is urged that Ordinance 4221 is unconstitutional, in that it deprives defendant of his liberty and of his property without due process of law. This objection is answered by the opinion of the Supreme Court of the United States in the case of Natal v. Louisiana, 139 U. S. 621, 11 Sup. Ct. 636, 35 L. Ed. 288, in the following language:
“The plaintiffs in error were severally complained of, tried, convicted, and sentenced in a recorder’s court in the city of New Orleans for keeping a private market * * * in violation of paragraph 4 of an ordinance of the city, copied in the margin, and passed under the authority conferred by the statute of Louisiana of 1878 (No. 100), as follows: (Quoting the statute.) The cases were consolidated! and on appeal to the Supreme Court of the state the judgments *801 were affirmed, 39 La. Ann. 439, 1 South. 923. The plaintiffs in error contended in the recorder’s court, and afterwards assigned for error, that their privileges and immunities as citizens of the United States had been abridged, and that they had been deprived of liberty and property without due process of law, and had been denied the equal protection of the laws, contrary to the fourteenth amendment of the Constitution of the United States. The case is too plain for discussion. By the law of Louisiana, as in states where the common law prevails, the regulation and control of markets for the sale of provisions, including the places and the distances from each other at which they may he kept, are matters of municipal police, and may be entrusted by the Legislature to a city council, to be exercised as in its discretion the public health and convenience may require. (Citing authorities.) The ordinance of the city of New Orleans prohibiting the keeping of a private market within six squares of any public market of the city, under a penalty of a fine of $25, and of imprisonment for not over 30 days if the fine is not paid, was within the authority constitutionally conferred upon the city council by the Legislature of the state. A breach of such an ordinance is one of those petty offenses against municipal regulations of police, which, in Louisiana, as elsewhere, may be punished by summary proceedings before a magistrate, without trial by jury. * * * Judgment affirmed.”
[5-7] This quotation of the Supreme Court of the United States was quoted and concurred in in the Faber Case, 105 La. 208, 29 South. 507, 53 L. R. A. 165, 83 Am. St. Rep. 232. What is therein said in reference to private markets has equal application to a place of public entertainment.
The relator has not suffered by having any privilege or immunity as a citizen of the United States or of the state abridged under the ordinance referred to, and it does not attempt to deprive him of his liberty or property without due process of law. He is not denied the equal protection of the law thereunder, contrary to the fourteenth amendment of the Constitution of the United States.
Relator has no statutory right to an injunction, and he has a remedy by appeal. It cannot be disputed that the ordinance was a necessary police regulation, in the opinion of tire commission. We have held in a number of cases that a mandamus will not issue where there is a remedy by appeal. As has been seen in the Murat Case, supra, under the enlarged supervisory jurisdiction of the court, the writ of mandamus will not be substituted for an appeal, and will not lie in an appealable case, save in emergency cases and denials of justice. Plaintiff clearly has a right of appeal from the refusal of the district judge to grant a preliminary injunction as prayed for by him.
The district judge has adduced satisfactory reasons, resting on an absence of facts and a consideration of the law, refusing the preliminary injunction asked for; which are, substantially, that the petition is deficient, and that it discloses no cause of action. Beebe v. Guinault, 29 La. Ann. 795; State ex rel. Murray v. Lazarus, Judge, 36 La. Ann. 578; Moyse v. Guion, Judge, 50 La. Ann. 492, 23 South. 614; State ex rel. Bachet v. Sommerville, Judge, 110 La. 954, 34 South. 953; Hanson v. Police Jury, 116 La. 1080, 41 South. 321; Murphy et al. v. Police Jury, 117 La. 355, 41 South. 647; Manion & Co. et al. v. Board of Directors, 119 La. 879, 44 South. 515.
Although the ordinance under consideration may be lawful on its face and apparently fair in its terms, yet, if it is enforced in such a manner as to work a discrimination against a party of the community for no lawful reason, such unlawful exercise of power will be set aside by the court, on the application of the party discriminated against.
it is therefore ordered, adjudged, and decreed that the rule nisi issued in this case be recalled and set aside; and that the application of relator be denied.