548 So.2d 936 (1989)
KNIGHTS OF COLUMBUS, CHAPTER NO. 2409
v.
LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, DIVISION OF STATE POLICE.
No. 88-C-2740.
Supreme Court of Louisiana.
September 12, 1989.
*937 Foye L. Lowe, Jr., for applicant.
Randell O. Lewis, for respondent.
DENNIS, Justice.[*]
We granted certiorari to determine whether the trial and appellate courts erred in issuing and affirming an injunction against the enforcement of criminal statutes. 536 So.2d 1226 (La.1989). We now reverse the lower courts' judgments, set aside the injunction and dismiss this suit at plaintiff's cost. Plaintiff has not shown the manifest unconstitutionality of the statutes, as is required to support such injunctive relief, nor has it shown any of the extraordinary circumstances that have been recognized in other jurisdictions as justifying an exception to the general rule against granting such an injunction.
On May 8, 1987, Chapter 2409 of the Knights of Columbus (KC) held a "Las Vegas Night" to raise money for operations and charity. This event consisted of cash gambling in the KC hall at roulette, craps, blackjack, and rented slot machines. The KC did not obtain a license from either the parish or the state as is required by the Charitable Raffles, Bingo and Keno Licensing Law, La.R.S. 33:4861.1 et seq. Upon learning of these activities, the State Police raided the KC Hall and seized the slot machines as contraband. The State Police warned the KC that casino-style gambling for cash was illegal and that anyone conducting such activities would be arrested.
On May 9, 1987, the KC instituted this proceeding against the Department of Public Safety and Corrections, Division of State Police. The KC alleged in its petition that its conduct was not illegal "under Title XIV of the Louisiana Revised Statute [sic] or other appropriate criminal laws of the State of Louisiana" because its activities were exempted from those statutes by La.R.S. 14:90.2(B) and La.R.S. 4:10.5. Alternatively, it claimed that "the law is applied to them as unconstitutional [sic] because of its ambiguity and arbitrary and capricious enforcement." The petition asked for a temporary restraining order, a preliminary injunction, and a permanent injunction preventing the State Police "from enforcing *938 the provisions of said law against the plaintiffs...." The trial court granted the temporary restraining order and ultimately issued an injunction prohibiting the State Police from "arresting any members of the Knights of Columbus, their agents or employees for or prohibiting them from conducting gambling activities at bona fide fairs and festivals for charitable purposes." The Department appealed suspensively. The court of appeal affirmed the issuance of the injunction, but remanded the case to the district court with instructions to specify "which activities are excluded from the anti-gambling statutes by R.S. 14:90.2(B), if in fact this statute's exemption applies." 532 So.2d 973, 975 (La.App. 5th Cir.1988).
The general rule is well settled. As in most jurisdictions, see H. McClintock, Handbook of the Principles of Equity § 173 (2d ed. 1948), Louisiana courts hesitate to interfere via injunction with the legitimate enforcement of criminal laws. To ensure that such interference does not lightly occur, this Court has set forth three requirements that must be met to justify enjoining pending or threatened criminal proceedings. A court should not grant such an injunction unless the plaintiff shows with reasonable certainty that (1) the statute is manifestly unconstitutional, (2) irreparable injury is threatened, and (3) existing property rights will be destroyed by enforcement. Plaquemines Parish Comm'n Council v. Perez, 379 So.2d 1373, 1383 (La.1980); LaBauve v. Louisiana Wildlife & Fisheries Comm'n, 289 So.2d 150, 152 (La.1974); National Food Stores v. Cefalu, 280 So.2d 903, 905 (La.1973); West v. Town of Winnsboro, 252 La. 605, 613, 211 So.2d 665, 668 (1967); Banjavich v. Louisiana Licensing Bd. for Marine Divers, 237 La. 467, 485, 111 So.2d 505, 508 (1959); Olan Mills, Inc. v. City of Bogalusa, 225 La. 648, 653, 73 So.2d 791, 793 (1954); State ex rel. Tranchina v. City of New Orleans, 141 La. 788, 798, 75 So. 683, 686 (1917); Le Blanc v. City of New Orleans, 138 La. 243, 273, 70 So. 212, 222 (1915).
Courts exercising civil jurisdiction have given a number of reasons for their reluctance to interfere with the enforcement of criminal laws. The traditional view was that a court sitting in equity lacked jurisdiction to interfere with criminal prosecutions. See, e.g., Ex parte Sawyer, 124 U.S. 200, 209-10, 8 S.Ct. 482, 487, 31 L.Ed. 402, 405 (1888); West v. Town of Winnsboro, 252 La. at 612, 211 So.2d at 668; H. McClintock, supra, § 173. Many have also stated that the opportunity to assert the inapplicability or invalidity of the statute as a defense to the criminal charge is an "adequate remedy at law" that precludes the granting of an injunction. See, e.g., Douglas v. City of Jeanette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324, 1329 (1943); Beal v. Missouri Pac. R. Corp., 312 U.S. 45, 49, 61 S.Ct. 418, 420-21, 85 L.Ed. 577, 579 (1941); Plaquemines Parish Comm'n Council v. Perez, 379 So.2d at 1383 n. 9. These justifications arise from the origins of the injunction as an extraordinary equitable remedy available only from the courts of chancery, although the history of English equity jurisdiction is of questionable relevance in Louisiana.[1]Le *939 Blanc v. City of New Orleans, 138 La. at 251-58, 70 So. at 215-17.
The most compelling source of the rule in modern Louisiana is our constitutional requirement of separation of powers. La. Const. art. II, §§ 1, 2. As this Court stated in LaBauve v. Louisiana Wildlife & Fisheries Comm'n:
Ever present as a basic precept of the judicial function is the elementary and fundamental proposition that the government of Louisiana is constituted as a tripartite system involving three coordinate branches or departments: the executive, legislative and judicial. Each branch to subserve the ends for which it is instituted must be separate, free and independent of the other. The judicial department, therefore, does not, except for the most weighty or grave reasons, interfere in the administration of the executive or legislative branches. Abuse of these fundamental tenets is more likely to arise by judicial usurpation of the executive or legislative functions. The design of government permits the judiciary to check the abuse of power by the executive or legislative branches. However, no provision of the organic law enables other departments to limit the authority of the judiciary. The sole limitation on the authority of the judiciary is the restraint its judges impose upon themselves.

* * * * * *
These principles present the threshold question: ... [W]hether the executive or co-ordinate branch should be deprived of its inherent, constitutional and statutory right to demand the enforcement of this law in the ordinary course of a criminal judicial proceeding.
289 So.2d at 151-52 (citations omitted). Thus absent a showing of extraordinary necessity, Louisiana courts will refrain from interfering via injunction with the prerogatives of the other branches of government.
The KC did not specifically name the statutes it asked the trial court to enjoin. It focused its arguments primarily upon La.R.S. 14:90 and 14:90.2, which prohibit gambling as a business and gambling in public, while the Department was concerned primarily with La.R.S. 33:4861.16(B)(2), which requires charitable organizations to obtain gaming licenses. Because of the breadth of the language of the injunction, we surmise that the district court intended to enjoin the enforcement of any criminal law pertaining to gambling with respect to any KC charitable fair. Regardless of the intended ambit of the injunction, however, the courts below erred. The plaintiff completely failed to show that any statute is manifestly unconstitutional.
The KC alleged that the gambling laws were unconstitutional because of their "ambiguity and arbitrary and capricious enforcement." Yet the organization did not specifically identify any fatal ambiguity in any statute. The gambling as a business law, La.R.S. 14:90, and the gambling in public statute, La.R.S. 14:90.2, have been upheld as constitutional against well articulated void for vagueness attacks. See State v. Griffin, 495 So.2d 1306 (La.1986) (upholding La.R.S. 14:90.2, gambling in public); State v. Davis, 208 La. 954, 23 So.2d 801 (1946); State v. Varnado, 208 La. 319, 23 So.2d 106 (1945) (both upholding former Criminal Code art. 90, now La.R.S. 14:90, gambling as a business). The KC does not contend that the Charitable Bingo *940 Law, La.R.S. 33:4861.1 et seq., is intrinsically ambiguous.
Instead, the KC seems to suggest that the exceptions contained in La.R.S. 4:10.5 & 14:90.2(B) make the entire legislative scheme regulating gambling unconstitutionally vague by creating a question as to whether they operate as blanket exceptions to all of the gambling statutes. To interpret these two statutory sections as omnibus exceptions to all the gambling laws, however, would be manifestly incorrect. A reading of La.R.S. 14:90.2(B) shows that the exception is limited to "[t]his Section," that is, § 14:90.2, the gambling in public law. Similarly, La.R.S. 4:10.5 states that "the provisions of R.S. 4:10 through 10.6," the regulations for games of chance operated at carnivals, do not apply to charitable organizations. La.R.S. 14:90.2(B) and La. R.S. 4:10.5, by their own terms, do not operate as exceptions to any statute other than the gambling in public law and the game regulations for non-charitable carnivals, respectively. Thus, they do not render the statutory scheme unconstitutionally vague. In the absence of a more cogent argument, we cannot say that any potentially applicable statute is manifestly unconstitutional due to vagueness or ambiguity.
The KC also averred and stated conclusorily that the statutes are being enforced against the organization arbitrarily and capriciously. We reject these assertions as being frivolous because there is absolutely no evidence or even a particularized factual allegation in the record to support them.
We pretermit consideration of whether the KC proved the existence of the other criteria for an injunction. The KC's failure to show the manifest unconstitutionality of any statute whose enforcement it seeks to enjoin requires dismissal of the injunction action.[2]
The trial court and the court of appeal evidently were deflected from an application of the foregoing legal principles by the KC's argument that its activities are not illegal under a correct interpretation of the statutes. Even if the plaintiff's interpretation were correct, however, a bare allegation that the plaintiff's activities fall outside the scope of a criminal statute is insufficient to support injunctive relief against the enforcement of that statute. See, e.g., Theodos v. Bossier City, 232 La. 1059, 1067, 95 So.2d 825, 827-28 (1957); Godfrey v. Ray, 169 La. 77, 83, 124 So. 151, 153 (1929). Unless the plaintiff shows the criteria making injunctive relief an extraordinary necessity, the applicability or legality of a statute forming the basis of a criminal proceeding must be tested in defending against the prosecution in criminal court, because "[n]o citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts." Beal v. Missouri Pac. R. Corp., 312 U.S. at 49, 61 S.Ct. at 420, 85 L.Ed. at 579; see also Douglas v. City of Jeannette, supra; Plaquemines Parish Comm'n Council v. Perez, supra; LaBauve v. Louisiana Wildlife & Fisheries Comm'n, supra.
The judgments below are reversed, the injunction is vacated, and the suit is dismissed at plaintiff's cost.
REVERSED; INJUNCTION VACATED; SUIT DISMISSED.
NOTES
[*] Lemmon, J., recused; retired Justice Fred A. Blanche, Jr., Justice ad hoc, assigned to sit in his place.
[1] Other states have made exceptions to their general rule that an equity court will not interfere with criminal processes when special circumstances were found to exist. Thus courts have indicated that they will enjoin pending or threatened prosecutions on res judicata grounds where the potential defendant has already been acquitted of violating the criminal statute, see Quinnelly v. City of Prichard, 292 Ala. 178, 291 So.2d 295 (1974); Doshner v. People, 51 Misc.2d 1033, 274 N.Y.S.2d 964 (Sup.Ct.1966); to protect their jurisdiction where the criminal proceedings are instituted by a person who is a party to a suit pending in equity to try the same right, see Economy Cleaners, Inc. v. Green, 21 Del.Ch. 170, 184 A. 225 (1936); Gulf Theatres v. State ex rel. Ferguson, 133 Fla. 634, 182 So. 842 (1938); Folsom v. South Carolina State Hwy. Dep't, 196 S.C. 167, 13 S.E.2d 130 (1941); Henderson v. Henderson, 156 Tenn. 430, 1 S.W.2d 526 (1928); Anderson, Clayton & Co. v. State ex rel. Allred, 122 Tex. 530, 62 S.W.2d 107 (1933); where the injunction is sought by a person or organization that is not or will not be a party to the criminal proceeding but nevertheless stands to suffer irreparable injury as a result of the prosecution, see Town of Darien v. Town of Stamford, 135 Conn. 71, 60 A.2d 764 (1948); Kingsley Int'l Pictures Corp. v. Blanc, 396 Pa. 448, 153 A.2d 243 (1959); where the available legal remedy will result in a multiplicity of suits, see Foley v. Ham, 102 Kan. 66, 169 P. 183 (1917); Stephens v. McCreary County, 258 Ky. 516, 80 S.W.2d 592 (1935); Kenyon v. City of Chicopee, 320 Mass. 528, 70 N.E.2d 241 (1946); Knight v. Johns, 161 Miss. 519, 137 So. 509 (1931); Sylvester Coal Co. v. City of St. Louis, 130 Mo. 323, 32 S.W. 649 (1895); Hoyt Bros. v. City of Lincoln, 130 Neb. 79, 263 N.W. 898 (1936); Cummings v. City of Las Vegas, 88 Nev. 479, 499 P.2d 650 (1972); Pennsylvania S.P.C.A. v. Bravo Enterprises, 428 Pa. 350, 237 A.2d 342 (1968); or where some combination of the above occurs, see Chamley v. City of Denver, 129 Colo. 55, 266 P.2d 1103 (1954) (multiplicity of suits and res judicata); Keuper v. Wilson, 111 N.J.Super. 502, 268 A.2d 760 (1970) (res judicata and previous litigation in equity). Some of these may qualify as true exceptions, while others might simply fulfill one of the requirements of the three-part test used in Louisiana. At any rate, no special circumstances are present in the instant case, so we need not consider whether any of the exceptions should be adopted in Louisiana.
[2] Moreover, the KC did not show the existence of any of the extraordinary circumstances that have caused other courts to create exceptions to their general rules against enjoining criminal prosecutions. See note 1. supra.